THOMAS M. TAYLOR & another[1] *vs*. THE TRANS-LEASE
GROUP & another.[2]

No. 91-P-1246.

Middlesex. January 22, 1993. - April 27, 1993.

Present: BROWN, GILLERMAN, & GREENBERG, JJ.

*Workers' Compensation Act*, Action against third person, Recovery from
third person, Reimbursement of insurer.

In a proceeding under G. L. c. 152, § 15, for approval of an agreement to
settle third-party claims arising from injuries for which an insurer had
paid workers' compensation benefits, the judge did not have authority
to discharge the insurer's full right of subrogation, as provided by § 15,
without its consent. [407-409]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 22, 1988.

A proceeding for approval of a settlement agreement was
heard by *Joseph S. Mitchell, Jr.*, J.

*Allen Whitestone* for Liberty Mutual Insurance Company.
*Amy G. Wanger*, for the plaintiffs, submitted a brief.

GREENBERG, J. Under G. L. c. 152, § 15, which estab-
lishes when a right of reimbursement accrues for the benefit
of a workers' compensation insurer from any recovery
against a third person, a Superior Court judge approved a
settlement agreement which halved the insurer's lien. We
conclude that, on the case before us, the reduction of the in-
surer's lien constituted error as matter of law. The material
facts necessary to consider the question of law presented are
not in dispute. We summarize them from the materials
which were presented to the judge at the hearing held to de-
cide whether to approve the settlement. See *Hartford Acc. &*

[1]Lisa Taylor brought a consortium claim.
[2]Richard Pendleton.

*Indem. Co.* v. *Atlantic Research Corp.*, 395 Mass. 1009, 1010 (1985).

Thomas M. Taylor alleged in his complaint that on October 19, 1987, he sustained personal injuries in the course of his employment while unloading furniture from a truck owned by the defendant. From the date of his injury to February 6, 1990, the date of the proposed settlement, Thomas received weekly workers' compensation benefits from his employer, Raytheon Company. He brought this action to recover damages for his injuries based on allegations of negligence against the defendants because of the defendant Pendleton's careless operation of the lift mechanism attached to the rear of the truck. In the same action, Thomas's wife, joining as coplaintiff, sought damages for her loss of consortium. After the case was readied for trial in the Superior Court, a compromise of their claims was effected. Thomas's claim was settled for $125,000; his wife's consortium case for $50,000.

Liberty Mutual Insurance Company (Liberty), Raytheon's workers' compensation insurer, was not a party to the plaintiffs' tort action.[3] At the hearing convened to approve the settlement, a dispute arose between the plaintiffs' and Liberty's counsel over the amount allocated by the plaintiffs as reimbursement for payments made by Liberty. Prior to the proposed settlement, Liberty had paid workers' compensation benefits to Thomas totalling $43,913.72. Out of the total settlement of Thomas's claim, $21,956.88 was allocated by the parties for full satisfaction of Liberty's lien.[4] That gross amount was calculated on the basis of fifty percent of the amount paid by Liberty for both weekly compensation benefits under G. L. c. 152, §§ 34, and 35A, and medical ex-

---

[3] The second sentence of G. L. c. 152, § 15, gives the employee complete control of the right to initiate a third-party action against the putative tortfeasor for the first seven months after the injury.

[4] See *Eisner* v. *Hertz Corp.*, 381 Mass. 127, 133-134 (1980) (a workers' compensation insurer is not entitled to receive as reimbursement under G. L. c. 152, § 15, any portion of the proceeds of the third-party settlement which is designated as compensation payment for loss of consortium).

penses paid under G. L. c. 152, § 30. An additional $7,426.64 was deducted from this amount to cover Liberty's proportionate share of attorney's fees and litigation costs to be paid to the plaintiffs' attorney. Thus, out of the settlement of the two cases, after satisfying Liberty's G. L. c. 152, § 15, lien by paying fifty percent of what was extended in compensation and deducting the legal fees and expenses, Liberty was to receive $14,530.24. Thomas, the injured employee, was to receive $67,301.63 and his wife $33,333.34.

Liberty was represented at the hearing by counsel who, as might be expected, objected to the proposal in no uncertain terms. Despite Liberty's opposition, the judge at the close of the hearing endorsed the proposal. Liberty, having a legitimate interest to protect, appealed the judge's decision. See *DiMartino* v. *Quality Industrial Propane, Inc.*, 407 Mass. 171, 174 (1990).

General Laws c. 152, § 15, as amended through St. 1986, c. 662, § 5A,[5] provides in relevant part as follows:

> "Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person, but the insurer may not do so unless compensation has been paid in accordance with sections seven, eight, ten A, eleven C, twelve or nineteen nor until seven months following the date of such injury. *The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee*, in which event the excess shall be retained by or paid to the employee. . . . For the purposes of this sec-

---

[5] We note that an earlier revision of § 15, by St. 1971, c. 888, abolished the necessity for an election between filing a workers' compensation claim and an action against a negligent third party. The need to elect between these remedies had long been a basic, if unfair, requirement of § 15.

tion, 'excess' shall mean the amount by which the total sum received in payment for the injury, exclusive of interest and costs exceeds the compensation paid under this chapter. . . . Except in the case of a settlement by agreement by the parties to, and during a trial of, such an action at law, no settlement by agreement shall be made with such other person without the approval of either the board, the reviewing board, or the court in which the action has been commenced after an opportunity has been afforded both the insurer and the employee to be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, which amount shall be determined at the time of such approval. . . ." (Emphasis added.)

On appeal, Liberty argues that, because it did not consent to accepting less than full reimbursement from the proceeds of the third-party action, the judge was not authorized to approve the proposed settlement. Liberty points out that the statutory language does not invest the judge with the authority to choose what amount shall be refunded, unless agreed upon by the workers' compensation insurer. We think that this construction is supported by both the pertinent legislative history and the case law interpreting the statute.

A workers' compensation settlement agreement requires approval by the Industrial Accident Board or, if made during trial of a third-party action, by the presiding judge. Section 15, as revised by St. 1929, c. 326, § 1, and St. 1939, c. 401, established the opportunity for the injured employee and the compensation insurer to be heard on the merits of third-party settlement. See *Calligaris's Case*, 292 Mass. 397 (1935); *Murphy* v. *Liberty Mut. Ins. Co.*, 294 Mass. 505 (1936).

In *Farrell's Case*, 344 Mass. 491 (1962), the Supreme Judicial Court explicitly assumed, without expressly deciding, that, under G. L. c. 152, § 15, as amended through St. 1943, § 432, the insurer is entitled to full reimbursement from the proceeds of the third-party action limited there only

by a stipulation agreed to by the insurer. *Id.* at 493. See Locke, Workmen's Compensation § 671 (1981).

In *Richard* v. *Arsenault*, 349 Mass. 521 (1965), the court reviewed the other side of the coin; that is, how to dispose of the excess (i.e., as defined in § 15: "the amount by which the total sum received in payment of the injury, exclusive of interest and costs, exceeds the compensation paid under this chapter"). In determining the nature of the judge's powers relative to an approval of settlements in that context, the court noted that "[t]hese powers include the ascertainment of the amount of reimbursement to which the insurer is entitled . . . [and] any damages awarded as a result of the third-party action must first be applied to reimburse the insurer for the compensation paid." *Id.* at 524.

When *Farrell* is read in conjunction with *Richard*, 349 Mass. at 524, it readily can be understood as standing for the proposition that the judge's review of the fairness of the settlement agreement does not include discretion to discharge the full right of subrogation provided by G. L. c. 152, § 15, over the workers' compensation insurer's objection. See *DiMartino* v. *Quality Industrial Propane, Inc.*, 407 Mass. 171, 175 (1990). Our opinion is in accord with that principle.

A contrary determination would enable a disgruntled injured party, who has received workers' compensation benefits, to force a settlement of the insurer's claim for compensation paid and, thus, defeat the insurer's right of subrogation. "The major principle favoring the insurer . . . is that an employee should not recover both workmens' compensation benefits and damages at law for the same injury." *Eisner* v. *Hertz Corp.*, 381 Mass. 127, 131 (1980), citing *McDonald* v. *Employers' Liab. Assur. Corp.*, 288 Mass. 170, 174 (1934); *Hunter* v. *Midwest Coast Transp., Inc.*, 400 Mass. 779 (1987).

The plaintiffs offer little argument for their construction of § 15 other than a liberal interpretation of an isolated phrase in the section which provides that when the insurer and the employee are heard on the merits of the settlement, the judge may consider the matter and "the amount, if any, to which

the insurer is entitled out of such settlement by way of reimbursement." They sweep aside the consequences of their reading of § 15 by claiming that the plain statutory language must be given its "usual and natural meaning." *Commonwealth* v. *Thomas*, 359 Mass. 386, 387 (1971).

Statutes are to be interpreted "according to the intent of the Legislature ascertained from all its words by the ordinary and approved usage of the language, considered in connection with the cause of the enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975). Section 15 has been read without undue literalism in order to promote its purpose to "prevent the employee from having a double recovery." *Pina* v. *Liberty Mut. Ins. Co.*, 388 Mass. 1001, 1002 (1983); *Bruso's Case*, 295 Mass. 531 (1936) (holding that an insurer is entitled to retain medical benefits paid under G. L. c. 152, § 30, from the proceeds of a third-party settlement under § 15).

Although one of the primary purposes of § 15 is to make the compensation insurer whole from the proceeds of the third-party action, the insurer may agree to accept less than the full reimbursement in connection with a settlement submitted for approval. There are cases, unlike that presented here, where the employee's share in the proposed settlement is so small that it may be in the insurer's interest to agree to accept less than full reimbursement in order to induce the employee to settle. Without the insurer's acquiescence, however, the right of reimbursement may not be abridged.

The judgment of the Superior Court is vacated, and the case is remanded for further hearing consistent with this opinion.

*So ordered.*