RONALD HULTIN & another[1] *vs.* FRANCIS HARVEY & SONS, INC.

No. 95-P-427.

Worcester. March 20, 1996. - July 9, 1996.

Present: SMITH, KAPLAN, & IRELAND, JJ.

*Workers' Compensation Act,* Action against third person, Injuries to which act applies, Settlement agreement. *Negligence,* Causing loss of consortium.

Claims of the spouse of an injured employee are independent and distinct from the personal injury claims of the employee and an insurer is not entitled to have its lien rights satisfied from the unallocated proceeds of a third-party tort action that include compensation for the spouse's claims. [694-696]

A Superior Court judge properly approved as fair, pursuant to G. L. c. 152, § 15, the settlement of third-party negligence claims that allocated seventy-nine percent of the proceeds to the spouse for loss of consortium and twenty-one percent to the injured worker, in circumstances in which the wife's loss was substantial and the husband's claim was speculative due to his own comparative negligence. [696-699]

CIVIL ACTION commenced in the Superior Court Department on July 25, 1991.

The case was heard by *Charles J. Hely,* J.

*Elizabeth Mulvey* for the plaintiffs.

*Terrance J. Hamilton,* for the insurer, submitted a brief.

IRELAND, J. This appeal by a workers' compensation insurance carrier arises from the way the proceeds from the settlement of a third-party negligence claim have been allocated between an injured insured employee and his spouse. The settlement was approved by a Superior Court judge pursuant to G. L. c. 152, § 15.

___

[1]Dorothy Hultin.

The appellant, Transportation Insurance Co. (TIC),[2] is the workers' compensation insurer for the plaintiff's employer and, through it, for the plaintiff Ronald Hultin (Hultin), who on November 27, 1990, sustained serious and disabling injuries in the course of his employment while performing excavation work at a construction site. Hultin received workers' compensation benefits from TIC under G. L. c. 152. In addition, he and his wife, Dorothy, filed a third-party complaint seeking damages from Francis Harvey & Sons, Inc. (Harvey), the entity that had hired Hultin's employer to perform the excavation work. Harvey agreed to settle the Hultins' claims by paying them $650,000.

Upon execution of the settlement agreement between Harvey and the Hultins, the Hultins filed a petition pursuant to G. L. c. 152, § 15, with the Superior Court for approval of the settlement. The proposed settlement allocated ninety percent of the total damages to the wife and ten percent to Hultin. TIC, a lien holder for benefits paid and, therefore, an interested party, appeared at the hearing on the petition and objected to the allocation formula.[3] The judge rejected the petition, stating that the allocation "is unfair to the workers' compensation lien holder."

In a revised petition for approval of the settlement, Harvey and the Hultins agreed to allocate seventy-nine percent of the proceeds to the wife and twenty-one percent to Hultin. After a second hearing, at which TIC again appeared and objected, the judge approved the petition upon finding that the revised allocation was fair and reasonable under the circumstances. The ensuing two judgments from which TIC now appeals award damages of $136,500 to Hultin and $513,500 to his wife. The judge held and the parties do not dispute that the entire amount allocated to Hultin will be applied to TIC's lien. TIC claims, however, that its lien against benefits

---

[2]Although TIC was neither a plaintiff nor a defendant, "General Laws c. 152, § 15, expressly grants the workers' compensation insurer . . . an opportunity to be heard concerning approval of a third-party settlement . . . [and it], therefore, has sufficient interest to be entitled to appellate review." *DiMartino* v. *Quality Industrial Propane, Inc.*, 407 Mass. 171, 174 (1990).

[3]At the time of the settlement agreement, TIC had paid Hultin $469,400 in weekly incapacity and medical benefits. Pursuant to G. L. c. 152, § 15, TIC holds a lien in that amount against any damages Hultin might receive as a result of his claims against a negligent third party.

amounting to $469,400 which it has already paid to Hultin should be satisfied *in full* out of the $650,000 settlement *before* any of the proceeds are allocated and that a portion of the remainder constitutes an excess recovery under G. L. c. 152, § 15, which is subject to an offset against future benefits it may pay Hultin.[4] TIC also contends that a disproportionate amount of the total settlement was allocated to the wife's consortium claims.

1. *TIC's reimbursement and offset rights.* General Laws c. 152, § 15, enables an injured employee such as Hultin, who has received workers' compensation benefits, to seek damages against a negligent third party. "The sum recovered," however, "shall be for the benefit of the insurer, unless such sum is greater than that paid by [the insurer] to the employee . . . ." G. L. c. 152, § 15, as appearing in St. 1991, c. 398, § 39.[5]

The cases have uniformly held that, when allocating the

---

[4]TIC emphasizes its substantial exposure to the injured employee for likely future medical claims.

[5]The statute goes on to provide, in pertinent part, as follows. (Material inserted by St. 1991, c. 398, § 39, is italicized.)

> "[N]o settlement by agreement shall be made with such [third party] without the approval of . . . the court in which the action has been commenced *after a hearing in which both the employee and the insurer have had an opportunity to be heard. At such hearing the court shall inquire and make a finding as to the taking of evidence on the merits of the settlement, on the fair allocation of amounts payable to the employee and the employee's spouse, children, parents and any other member of the employee's family or next of kin who may have claims arising from the injury for which are payable, under this chapter in which the action has been commenced* after an opportunity has been afforded both the insurer and the employee to be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, *and on the amount of excess that shall be subject to offset against any future payment of benefits under this chapter by the insurer,* which amount shall be determined at the time of such approval. *In determining the amount of 'excess' that shall be subject to offset against any future compensation payment the board, the reviewing board, or the court in which the action has been commenced shall consider the fair allocation of amounts payable to and amongst family members who may have claims arising from the injury for which said compensation is payable.*"

proceeds from the settlement of a third-party tort action brought by an injured employee, an insurer's right to full reimbursement of benefits it has paid to the injured employee under G. L. c. 152, or to members of his family under § 31 or § 35A of G. L. c. 152, may not be compromised, abridged, or equitably allocated to others so as to deprive the insurer of its lien. *Eisner* v. *Hertz Corp.*, 381 Mass. 127, 132-133 (1980) (proceeds of third-party settlement allocated to decedent employee's widow and dependents, who had received death benefits from the insurer under G. L. c. 152, § 31, were subject to reimbursement of insurer's lien under § 15). *Rhodes* v. *Beacon Sales Co.*, 416 Mass. 14, 17-18 (1993) (proceeds from settlement of employee's third-party action may not be equitably allocated by the judge between insurer and employee based on relative merits of employee's claim). *Bongiorno* v. *Liberty Mut. Ins. Co.*, 417 Mass. 396, 402 (1994) (proceeds from legal malpractice action that stemmed from an injured employee's third-party tort claim were subject to insurer's lien under § 15). *Taylor* v. *Trans-Lease Group*, 34 Mass. App. Ct. 404, 407-409 (1993).

The claims of the spouse of an injured employee for loss of consortium, however, are entirely independent and distinct from the personal injury claims of the employee. *Feltch* v. *General Rental Co.*, 383 Mass. 603, 607-608 (1981). Moreover, a spouse's loss of consortium is not a compensable injury under G. L. c. 152. *Bongiorno* v. *Liberty Mut. Ins. Co.*, 417 Mass. at 404 n.9. *Taylor* v. *Trans-Lease Group*, 34 Mass. App. Ct. at 405 n.4, citing *Eisner* v. *Hertz Corp.*, *supra* at 133-134. Hence, TIC's lien for "benefits provided under this chapter [G. L. c. 152]" does not extend to that portion of the settlement that has been allocated to a nonemployee spouse for loss of consortium. See *Bongiorno* v. *Liberty Mut. Ins. Co.*, *supra*; *Walsh* v. *Telesector Resources Group, Inc*, *ante* 227, 229 (1996).

TIC urges us, nonetheless, to construe the 1991 amendment to G. L. c. 152, § 15 (see note 5, *supra*), to create, in essence, an absolute right for the insurer to have its lien rights satisfied out of the total available proceeds of a third-party tort action before any allocation has been made. As support, TIC relies on the cases previously cited in this opinion, all holding that, as between the insurer and the insured employee, the insurer's lien rights may not be compromised.

Those cases are distinguishable for the simple reason that the settlement proceeds were derived exclusively from the insured employee's third-party tort claims, and not from the spouse's loss of consortium claims.

We also see nothing within the 1991 amendment that points us in the direction TIC would have us travel. Section 15, as amended, requires the court during a hearing on approval of a settlement, to "inquire and make a finding as to the taking of evidence on the merits of the settlement, [and] on the fair allocation of amounts payable to the employee and the employee's spouse . . . and any other member of the employee's family." The 1991 amendment further requires that "the amount of excess [once the insurer's lien has been satisfied] that shall be subject to offset against any future payment of benefits . . . shall be determined at the time of such approval" in light of "the fair allocation of amounts payable to and amongst family members."

The 1991 amendment focuses in large part upon an insured employee's statutory excess recovery and on the insurer's possible corresponding rights of offset for future benefits against any such excess. Language inserted by that amendment requires that the insurer's rights to an offset from the statutory excess be determined at the time of the hearing, taking into consideration the "fair allocation" of damages between the injured employee and other family members. Finding nothing in the 1991 language that expands the insurer's basic lien rights at the expense of the consortium claim of a spouse, we hold that § 15 does not allow a workers' compensation insurer to satisfy its statutory lien against past benefits paid out of the total proceeds available in a third-party claim *prior* to allocation of those proceeds between the insured employee's personal injury claims and the spouse's loss of consortium claims. From this, it follows that TIC is entitled to reimbursement of its lien (after proportionate deductions described elsewhere in § 15 for attorney's fees and other costs) only from the twenty-one percent portion of the total recovery allocated to Hultin as the insured employee. Moreover, because its lien against benefits already paid remains partially unsatisfied and where the proposed split was a fair one in the circumstances (as we decide, *infra*), we can safely conclude — as did the judge — that TIC has no offset rights.

2. *Fairness of the allocation.* At the hearing for approval of

the Hultins' settlement agreement, the judge was required to "inquire and make a finding as to the taking of evidence on the merits of the settlement [and] on the fair allocation [of the proceeds]." G. L. c. 152, § 15. In his memorandum of decision approving the settlement, the judge stated simply that the seventy-nine and twenty-one percent allocation was "fair." We think that the better course — and one more in keeping with the statute's intent — would have been for the judge to have made subsidiary findings of fact which led him to his conclusion that the allocation was "fair." Nevertheless, we accept the judge's over-all finding as it is not clearly erroneous and is supported by evidence in the record.

Attached to the judge's memorandum, and incorporated therein, is the Hultins' own memorandum in support of their petition for approval of the settlement. In it, the Hultins describe with particularity Hultin's and his wife's injuries. Hultin's injuries are well known to the parties, and, hence, we need not restate them. Suffice it to say, they are extensive and disabling.

For her part, the wife has suffered the substantial loss of her husband's companionship and consort. The couple now have little social life to speak of, whereas, before the accident, they enjoyed an active social life together. They no longer engage in marital relations, and the wife has not been able to return to work as she must provide day-to-day care for her husband, including preparing his meals and assisting him with bathing and dressing. In addition, the wife must now do all of the outside yard work around the couple's house, where previously that was largely her husband's domain. Because Hultin has little control over his hands or his grip, the wife must perform certain basic manual operations for him. As a result of extensive burning over much of Hultin's body, he is unable properly to adjust to normal room temperatures and, hence, will sometimes turn on the air conditioner in the winter, or the heat in summer, creating obvious and extreme discomfort for his wife. Over-all, Hultin's frustration, anger, frequent mood swings, and seeming loss of interest in life are difficult for his wife to live with.

The Hultins' memorandum also makes clear that Hultin's own conduct was a major contributing cause of the accident

at the construction site.[6] That conduct — if considered by a jury — may well have proved fatal to Hultin's negligence claims against Harvey. Success of the wife's consortium claim, by contrast, depended solely upon a jury's finding Harvey causally negligent to some degree for Hultin's accident.[7] Hence, her claim would not necessarily have been defeated because of her husband's comparative negligence. See, e.g., *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262 (1986). The judge explicitly recognized this point. He observed during the hearing, "The liability claim is speculative for both the husband and the wife, [but] [i]t's more speculative for the husband because of comparative negligence." Likewise, TIC admitted that Hultin's claim, because of the high degree of his comparative negligence, was weaker than the wife's.

Given the statutory language, we conclude that the judge's inquiry into the "merits of the settlement" allowed — indeed, required — him to consider and weigh the relative merits of the husband's and the wife's claims when deciding whether or not the recommended allocation was fair in the circumstances. The judge had before him the fixed and undisputed figure of $650,000 as total damages, and, hence, the sole issue at the hearing, essentially, was how that figure should be apportioned between the two plaintiffs in light of the comparative worth of their respective claims.[8]

TIC has argued with some force that the apportionment of damages amounts to a transparent effort by the settling parties to defeat its lien rights and to deny it any offset rights. Again, this overlooks the extent to which the husband's claim was weakened by serious, if not fatal, questions of comparative negligence. In its reply brief, TIC buttresses its point that

[6]Investigations of the accident conducted by the United States Department of Labor Occupational Safety and Health Administration (OSHA) and the Massachusetts Department of Public Safety both concluded that Hultin's actions were a contributing, if not the major contributing, cause of the accident.

[7]The judge found the issue "very triable" as to whether Harvey was in any way at all a contributing cause of the accident.

[8]The judge was confined to approving or rejecting the parties' proposed allocation upon making the findings required by the statute; he could of course have made disinterested observations as to a different allocation. He could not, however, have substituted his judgment for that of the parties and imposed upon them his own formula. See *Walsh* v. *Telesector Resources Group, Inc., supra* at 233.

the allocation formula — heavily favoring as it does the consortium plaintiff over the employee — is quite unusual. This may well be so. See, e.g., *Walsh* v. *Telesector Resources Group, Inc.*, *supra* at 229-230 (judge "accepted as factual the 'belief' of plaintiffs' counsel that the 'normal expected consortium settlement is in the range of [twenty percent] of the amount set aside for the injured spouse' "). The judge's over-all finding that the recommended allocation formula was fair in the circumstances was based on dual considerations, including the relative seriousness of the wife's own injuries — as distinct and apart from those of her husband — and the obvious infirmities of the husband's case. Given the unique circumstances here presented, that finding is amply supported by evidence in the record pertaining to the settlement and, therefore, is not clearly erroneous.

We wish, however, to reemphasize the strong policy underlying the workers' compensation statute against the sort of double recovery that is possible whenever settlement of a third-party claim involving an injury to an employee and the loss of consortium of a spouse or family member has been so structured as to insulate a significant portion of the proceeds from the insurer's statutory rights to full reimbursement of compensation benefits it has already paid, and to a possible offset against any excess recovery for future compensation benefits it may have to pay. See *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. 171, 176-177 (1990). Absent countervailing factors such as are found here (or other equally unusual factors), we think that a settlement agreement of an employee's third-party tort action that has been submitted to the Superior Court for approval, pursuant to G. L. c. 152, § 15, wherein the bulk of the settlement proceeds has been allocated to the loss of consortium claims of the nonemployee spouse or family member, and not to the claims of the injured employee, must be eyed by the court with a healthy dose of skepticism. Moreover, in unusual cases such as this, explanatory or subsidiary findings become particularly critical on the question of "fair allocation" of settlement proceeds.

*Judgments affirmed.*