JEAN TURNER & others[1] *vs.* THOMAS K. DYER, INC., & others.[2]

No. 94-P-784.

Middlesex. April 10, 1995. - November 25, 1996.

Present: SMITH, GILLERMAN, & IRELAND, JJ.

*Workers' Compensation Act,* Amount of compensation, Double compensation, Settlement agreement. *Words,* "Statutory excess."

In a civil action involving an injury to an employee at her workplace for which the employee had received workers' compensation benefits, the judge who was considering the parties' proposed settlement pursuant to the provisions of G. L. c. 152, § 15, erred in calculating the amount of "statutory excess" subject to offset against further payments of workers' compensation benefits to the employee. [707-708]

CIVIL ACTION commenced in the Superior Court Department on December 24, 1990.

A motion to approve a third-party settlement was heard by *Julian T. Houston,* J., and entry of an amended judgment was ordered by him.

*Terrance J. Hamilton* for the insurer.

*Jeffrey Petrucelly* (*Patricia Cantor* with him) for the plaintiffs.

SMITH, J. On or about December 29, 1987, Jean Turner (employee) was injured during the course of her employment with DNS Associates, Inc. (employer), on premises owned by Lexington Center Realty Trust (Lexington), managed by W. H. Lyon Realtors, Inc. (Lyon), and leased to Thomas K. Dyer, Inc. (Dyer). She filed for workers' compensation benefits from CNA Insurance Companies (CNA), the employer's workers' compensation insurer. CNA paid $122,235.98 to the employee in weekly benefits (including a lump sum settlement) and $26,758.66 to various health care

---

[1]Christina Cerbone and Michael Cerbone.

[2]Lexington Center Realty Trust and W. H. Lyon Realtors, Inc.

providers, for a total of $148,994.64.[3] The employee also brought a civil action in the Superior Court against Lexington, Lyon, and Dyer. The parties reached an agreement to settle those third-party claims for a total of $216,000. Because there was a settlement after the case was entered in the Superior Court, G. L. c. 152, § 15, required judicial approval of the settlement. During the settlement approval hearing, the judge "shall inquire and make a finding" regarding not only "the fair allocation of amounts payable to the employee and the employee's spouse, [and] children . . .," but also "the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, and on the amount of excess that shall be subject to offset against any future payment of benefits under this chapter by the insurer, which amount shall be determined at the time of such approval." G. L. c. 152, § 15, as appearing in St. 1991, c. 398, § 39.[4] The issue in this case is whether the judge correctly determined the amount of the excess that should be subject to offset against any further workers' compensation benefits.

Here, of the total settlement of $216,000, $30,000 was allocated to the employee's children for their loss of consortium claims. See *Hultin* v. *Francis Harvey & Sons, Inc.*, 40 Mass. App. Ct. 692, 696 (1996). CNA voluntarily agreed to compromise its statutory lien of $148,994.64 by $98,994.64 and accepted in reimbursement a net sum of $50,000. The remainder of the settlement proceeds of $136,000 were divided between the employee and her attorney: her attorney received a fee of $65,000 and costs of $8,000; the employee received a net recovery of $63,000. CNA claimed that the amount of the

---

[3]For ease of reference, we have rounded off $148,994.64 to $149,000 throughout this opinion.

Pursuant to G. L. c. 152, § 48(2), CNA remains liable for payment of medical benefits with respect to the employee's industrial injury.

[4]The statute defines "excess" as "the amount by which the gross sum received in payment for the injury exceeds the compensation paid under" the Workers' Compensation Act. See G. L. c. 152, § 15.

The statute also states that: (1) the party who "brings the actions or which pays the costs associated with the action . . . shall be entitled to retain those costs recovered in the action"; (2) "[a]ny interest received in the action shall be apportioned between the insurer and the employee in proportion to the amounts received by them respectively, exclusive of interest and costs"; and (3) "[t]he expenses of attorney's fees shall be divided between the insurer and the employee in proportion to the amounts received by them respectively, under this section." *Id.*

excess subject to offset was $63,000; the employee contended that the excess was $21,000. Because of this disagreement CNA refused to sign a joint motion to approve the third-party settlement. The employee filed an emergency motion to enforce the third-party settlement, which was denied by a Superior Court judge.

The parties, including CNA, then filed a joint motion for reconsideration of the denial of the parties' joint motion for approval of the third-party settlement. The motion stated that although CNA approved the settlement, the employee and CNA disagreed as to the amount of "excess that shall be subject to offset against any further payment of benefits . . . ." G. L. c. 151, § 15. The parties requested that the judge make the determination.

After a hearing on the matter, a Superior Court judge determined that the statutory excess was $21,000 and that CNA must pay thirty-five percent of the employee's future workers' compensation benefits until the total sum of $21,000 in claim benefits had been submitted to it. The judge did not explain the method by which he calculated the excess to be $21,000.

CNA filed an appeal to this court, claiming that the judge committed error in calculating the excess that CNA was entitled to offset against future compensation benefits and that the excess subject to the offset was $63,000. In her brief, the employee conceded that the $21,000 figure reached by the judge was incorrect and claimed that the correct amount of the excess subject to the offset should be $29,000.[5]

Because the record failed to show how the judge determined that $21,000 was the amount of the excess, we remanded the matter to the judge for him to explain how he arrived at that amount. In response to our order of remand, the judge filed an amended memorandum of decision and order. We quote from his memorandum.

"Statutory 'excess' is defined in G. L. c. 152, § 15, as 'the amount by which the gross sum received in payment for the injury exceeds the compensation paid.' In this case, the 'gross sum received' is $216,000 and the 'compensation paid' is

---

[5]The parties agree that CNA must pay thirty-five percent of the employee's future claims as long as there remains excess subject to offset; therefore the percentage figure and the method of its calculation are not issues in this case.

$149,000. Pursuant to § 15, this Court considers the 'fair allocation of amounts payable to and amongst family members' and, thus, subtracts $30,000, the amount allocated to the children, from the 'gross sum received' for the injury, $216,000, resulting in $186,000. This Court then subtracts $149,000, the compensation paid by CNA, from $186,000, resulting in $37,000. Finally, this Court subtracts costs of $8,000, resulting in a statutory excess of $29,000." In a revised judgment, the judge ordered CNA to pay thirty-five percent of the employee's future workers' compensation benefits until the total sum of $29,000 dollars in claim benefits had been submitted to the insurer. We hold that the judge committed error in calculating the amount of the excess subject to offset against further payments of workers' compensation benefits to the employee.

In order to calculate the amount of excess subject to an offset against future workers' compensation payments, the $30,000 paid to the employee's children to satisfy their loss of consortium claims must first be deducted from the $216,000, leaving $186,000. *Hultin* v. *Francis Harvey & Sons, Inc.*, 40 Mass. App. Ct. at 696. Because G. L. c. 152, § 15, entitles CNA to receive complete reimbursement for benefits already paid to the employee at the time she settles her third-party claims, that amount ($149,000) would ordinarily be deducted from $186,000. CNA, however, agreed to compromise its statutory lien and accept $50,000; consequently, it is the sum of $50,000 and not $149,000 that the judge should have deducted from $186,000. *Hunter* v. *Midwest Coast & Transport, Inc.*, 400 Mass. 779, 784 (1987). Further, the judge failed to deduct the employee's attorney's fees as required by G. L. c. 152, § 15. These errors resulted in the judge's ruling that the employee received a net award or excess of $29,000 when in fact, because of CNA's settlement compromise, the employee actually received $63,000.

Applying the mathematical formula set forth in *Hunter*, the employee's attorney's fees ($65,000.00), and costs ($8,000), as well as the reimbursement to the insurer for compensation paid before the settlement of the third-party action ($50,000), must be deducted from the third-party recovery ($186,000), in order to determine the insurer's

offset.[6] The total of the employee's attorney's fees, costs, and the amount of the reimbursement to the insurer is $123,000. When the $123,000 is subtracted from the third-party recovery ($186,000), the amount of $63,000 is reached. Therefore, the excess subject to offset is $63,000, not the $29,000 found by the judge. To hold otherwise would mean that the employee would receive a double recovery for her injury, to the extent her future medical bills exceed $29,000 but are less than $63,000.[7] A double recovery is forbidden by the Workers' Compensation Act. *Richard* v. *Arsenault*, 349 Mass. 521, 524 (1965). Further, the practice of compromising liens is recognized as a means of encouraging settlements when the payment of the full amount of the compensation lien would make third-party settlements an unattractive option for an employee. *Taylor* v. *The Trans-Lease Group*, 34 Mass. App. Ct. 404, 409 (1993).

The amended judgment is modified by substituting $63,000 for $21,000 as the statutory excess in this matter, and by ordering CNA to pay thirty-five percent of the plaintiff's future workers' compensation benefits until a total of $63,000 in claims benefits has been submitted to CNA. As so modified, the amended judgment is affirmed.

*So ordered.*

---

[6]The parties agreed, and it appears that the judge found, that in securing the third-party recovery, the employee paid costs of $8,000, and attorney's fee of $65,000. It should be noted that CNA did not pay its share of attorney's fees and costs incurred in obtaining reimbursement of the $50,000 as required by the court's ruling in *Daly's Case*, 405 Mass. 33, 37-39 (1989).

However, because the parties have agreed to this method of allocating the payment of these expenses, it is not an issue before this court. Therefore, we will use the parties' figures regarding the amount of fees and costs paid by the employee in order to calculate the amount of excess subject to offset.

[7]CNA must pay thirty-five percent of each future claim submitted by the employee until the total amount of claims submitted to CNA reaches $63,000. Then CNA must resume responsibility for one hundred percent of the payment of claims submitted thereafter. *Hunter* v. *Midwest Coast Transport, Inc.*, 400 Mass. at 781; *Percoco's Case*, 418 Mass. 136, 139, 140 (1994).