Sosman, J.
Plaintiff Richard Riley brought the present action against the manufacturer and lessor of a filing cabinet complaining of injuries he sustained when the cabinet tipped over onto him at his office. Riley’s wife and children also brought claims for loss of consortium. The parties have agreed to a settlement in the total amount of $225,000, allocating $29,250 of the settlement proceeds to plaintiff Richard Riley and the remaining $195,500 to the consortium plaintiffs. The workers’ compensation carrier, Travelers Property Casualty, has a lien of $281,046.96. Pursuant to G.L.c. 152, §15, the parties submitted a petition to approve the proposed settlement. Travelers opposed that settlement, arguing that the allocation of proceeds between the injured worker and the consortium plaintiffs was not a fair allocation. For the following reasons, the petition for approval of settlement is DENIED.
Facts
On March 2, 1988, plaintiff Richard Riley was employed as an attorney by Aetna Casualty and Surety, working at Aetna’s branch office in Boston. He was returning some files to a file cabinet in his office when the cabinet fell over, trapping his right leg underneath. There was blunt trauma to the leg itself, and his right foot was broken. He was taken to the emergency room for immediate treatment. At some later point, he had two surgeries to his leg and foot. Following surgeries and physical therapy, plaintiff continued to suffer from drop foot, swelling, pain, and sensory loss in portions of his toes, foot and leg. He is still unable to stand for prolonged periods of time. Riley did not return to work for over three years, and he has not been fully re-employed since the accident. At argument, plaintiffs counsel advised the court that the lost earnings component of Riley’s claim was in excess of $1,000,000.
At the time of this incident, Riley was married to plaintiff Maureen Riley. He had five children (plaintiffs Hannah, Sandra, Joan, Maura and Alan Riley), all of whom were in their teenage years, at or approaching college age. Prior to his accident, Richard Riley had been the primary provider for the household. After the accident, Maureen Riley had to take over as primary *387 wage earner. The petition describes that the children’s college education was jeopardized, as the loss of Richard Riley’s earnings made college very difficult to afford. The children worked, took out loans and obtained scholarships, and Richard Riley depleted his retirement savings and incurred additional debt, all of which ultimately enabled the children to attend Columbia University, Smith College, Boston College, Harvard University and Princeton University. By now, all five children are either enrolled in college or have graduated from college, and three of them have obtained advanced degrees.
The accident occurred while Richard Riley was acting in the course and within the scope of his employment. The workers’ compensation insurer, Travelers/Aetna Casualty and Surety Company (now Travelers Property Casualty) paid approximately $411.18 in weekly benefits until September 17, 1991 plus medical expenses of $14,758.96. Riley’s workers’ compensation claim was ultimately settled for a lump sum, resulting in a workers’ compensation lien of $281,046.96.
Plaintiffs brought the present action against G.F. Furniture Systems, Inc. (the alleged manufacturer of the file cabinet in question) and American Finance Group (the supplier/lessor of the file cabinet). Plaintiffs’ claims allege theories of negligence, breach of warranty, and strict liability. Defendants dispute the identity of the cabinet, and they contend that it had no defects. They also contend that, as managing attorney for the office, Richard Riley was responsible for supervising the proper installation and use of the cabinet and that the accident was the fault of Riley and/or his employer. They also contend that the injury to Riley’s leg and foot did not prevent him from practicing law and they thus dispute the claimed lost wages and lost earning capacity.
Defendant Equis Financial Group (successor to defendant American Finance Group) filed a third-party complaint against Norlease, Inc. and Aetna Life Insurance Co., seeking contribution and indemnification based on provisions in the underlying equipment lease and assignments. Defendant G.F. Furniture filed for bankruptcy, leaving only its liability insurance policy as a source from which plaintiffs could recover.
After extensive settlement discussions amongst all parties, a total settlement figure of $225,000 was agreed upon, with $165,000 offered on the claim against G.F. Furniture and $60,000 offered on the claim against American Finance Group, Inc. /Equis Financial Group. The gross settlement proceeds were allocated amongst the various plaintiffs as follows: $29,250 to Richard Riley; $58,500 to Maureen Riley; $38,500 each to Alan Riley, Maura Riley and Joan Riley; and $11,250 each to Sandra Riley and Hannah Riley. Thus, the proposed settlement allocates 13% of the proceeds to the injured worker and 87% of the proceeds to his family. Plaintiffs had agreed to a one-third contingent fee, but plaintiffs’ attorneys agreed to reduce that fee to 25% for the consortium plaintiffs only, resulting in total attorneys fees of $58,687.50. After taking out attorneys fees and $13,766.20 in expenses, the net settlement proceeds to Richard Riley would be $17,710.39 and the net proceeds to the rest of the Riley family would be $134,835.91. Thus, Richard Riley would receive less than 12% of the net settlement proceeds and his family would receive more than 88% of the net settlement proceeds.
Since the proceeds paid to the consortium plaintiffs would not be subject to the workers’ compensation lien, Travelers Casualty Property would receive only $17,710.39 towards its $281,046.96 lien if this settlement were approved.
Discussion
Pursuant to G.L.c. 152, §15, a workers’ compensation carrier is allowed to be heard on the issue of whether the court should approve a proposed third-party settlement. In determining whether to approve such a settlement, one of the items that the court must consider is whether there has been a “fair allocation" of settlement proceeds between the injured worker and any consortium plaintiffs. Id. An unreasonable or unjustified allocation favoring consortium plaintiffs should not be approved, as such an allocation would unfairly deprive the workers’ compensation carrier of its statutory right to recovery from a negligent third party.
On its face, an allocation of only 13% of the settlement proceeds to the injured worker and 87% of the proceeds to other family members is highly suspect, and such an allocation is to be reviewed “with a healthy dose of skepticism.” Hultin v. Francis Harvey & Sons, Inc., 40 Mass.App.Ct. 692, 699 (1996). Such lopsided allocations subvert “the strong policy underlying the workers’ compensation statute against the sort of double recovery that is possible whenever settlement of a third-party claim involving an injury to an employee and the loss of consortium of a spouse or family member has been so structured as to insulate a significant portion of the proceeds from the insurer’s statutory rights to full reimbursement of compensation benefits it has already paid.” Id.
Plaintiffs argue that Huitín supports the reasonableness of their proposed allocation because Huitín affirmed a trial court decision approving allocation of 79% of the settlement proceeds to the injured worker’s wife and only 21% to the injured worker. Plaintiffs argue that if only one consortium plaintiff can take 79% of the proceeds, then it is per se reasonable for six consortium plaintiffs to take 87% of the proceeds.
Nothing in Hultin suggests the kind of mathematical argument made by plaintiffs in this case.[1] Rather, Hultin noted that a spouse’s consortium claim is normally valued at around 20% of the value of the injured *388 spouse’s claim. Id. Hultin then recognized that “unique circumstances” and “unusual factors” may occasionally make it appropriate to allocate a larger portion of the proceeds to a consortium claimant. Id. Finding that such “unique circumstances” and “unusual factors" were present, the Appeals Court decided that the trial judge had not been clearly erroneous in his decision to approve that particular settlement. Thus, a proponent of what appears to be a grossly disproportionate allocation may not justify the settlement by simple reference to the percentage allocation approved in Hultin, but rather must show that there are some unusual facts and circumstances comparable to those found in Hultin.
With regard to the facts in Hultin, the injured worker had been seriously disabled, with extensive burns over much of his body. Among other disabilities resulting from his injuries, Hultin had little ability to control his hands or to grip objects, rendering him totally helpless with respect to many tasks. His wife, who had previously had her own job, had to return to the home to take over her husband’s day to day care. She needed to assist him with such daily tasks as bathing and dressing. She had to take over the entirety of tasks around the house. She could not have sexual relations with her husband, and she and her husband had very little social life as a result of the accident. Hultin’s burn injuries were such that his body could not adjust to normal room temperatures, causing him to heat or cool the house to abnormal temperatures which Mrs. Hultin then had to tolerate. Finally, Hultin’s physical disabilities had led to levels of frustration, anger and mood swings that were extremely difficult for his wife to endure. As described, the impact on Hultin’s wife was enormous and permanent, causing a complete transformation of both her relationship with her husband and indeed her entire way of life. Given both the magnitude and the permanence of the impact on Mrs. Hultin, the court recognized that her loss of consortium claim was not the minor adjunct to her husband’s claim that would typically be expected of a loss of consortium claim.[2]
There are no such unusual features to the consortium claims in the present case. While it is certainly distressing to deal with a spouse’s broken leg, there is no indication that Riley’s physical limitations have inflicted on Mrs. Riley the kind of devastating damage that was at issue in Hultin. Indeed, in the memorandum submitted in support of this settlement, the principal “damage” described with respect to family relationships is financial. It alleges that Riley’s wife had to become “the primary financial provider" for the household. Its silence on other consortium issues is understandable, as a broken leg, or even a badly broken leg, can only do so much in the way of consortium damage. A broken extremity does not cause any permanent interruption in the ability to engage in marital relations. A limp, or an inability to stand for prolonged periods, does not prevent a husband and wife from socializing with others. A broken leg or a resulting limp does not make Riley permanently dependent on his wife for such tasks as bathing and getting dressed. Nor does it cause fundamental and permanent changes in mood and personality, or force Mrs. Riley to live in an erratically heated home.[3] Whatever loss of consortium Mrs. Riley thinks she has suffered on account of her husband’s leg injury, she has not suffered the catastrophic loss that Mrs. Hultin had to endure.
The children’s consortium claims also present no unusual or uniquely compelling features. Indeed, the children were all well into their teenage years and on their way to college. They were at a stage in their life when independence from parents is the goal. The life of a child away at college is not affected in any devastating way by the fact that his father has broken his leg. Again, with respect to the children, the memorandum in support of the settlement only cites financial issues, claiming that the children became “insecure” about their ability to pay for college as a result of their father’s injury. Of course, a claim for lost wages or lost earning capacity is Riley’s own claim, not a component of his children’s loss of consortium claim. That the children had to work and take out loans in order to complete their education is not a “consortium” loss. Moreover, a jury would award at most a token amount to compensate for such alleged financial “insecurity," especially where all of the children were in fact able to complete their college (and in some cases post-graduate) education at top-ranked schools. Without belittling the Riley children’s feeling for their father or their upset on his behalf upon learning of his accident and resulting disabilities, those disabilities are not of the sort that would destroy a father’s relationship with children who are largely grown. At trial, one would predict at most very minor awards for the consortium claims of the Riley children, with a substantial likelihood that the jury would find that they had not suffered any loss of consortium on account of their father’s leg injury.
Another factor that may justify increasing the allocation in favor of consortium plaintiffs is the presence of issues in the case that would tend to defeat or reduce the injured worker’s claim but that would not offset or reduce the consortium claim(s). In Hultin, defendant raised a substantial comparative negligence defense, bolstered by OSHA and Department of Public Safety investigations that had both found Hultin’s actions to be a substantial factor in the accident. Hultin’s comparative negligence could reduce or potentially eliminate his claim, but that comparative negligence would not serve to reduce or eliminate his wife’s consortium claim.
While Massachusetts law of comparative negligence makes it technically possible for the spouse and children of an injured person to recover substantial damages for loss of consortium even if the injured person *389 himself is awarded little or nothing, such an outcome is rare and indeed largely unheard of.[4] The relative settlement value of the respective plaintiffs claims must be based at least in part on an assessment of likely results at trial, not just results that are theoretically permissible under the comparative negligence statute. Thus, while the comparative negligence issue is certainly a factor that Hultin identifies as one to be considered in valuing each plaintiffs claim, it should not be enough, by itself, to justify awarding consortium plaintiffs an amount far in excess of the award to the injured worker. An allocation granting more to the consortium plaintiffs is premised on a projected trial result that almost never occurs, even in cases where there is a substantial issue of comparative negligence.
The proponents of the settlement in this case claim that, like Hultin, Riley’s own claim is vulnerable on issues of comparative negligence while the consortium claims suffer no such vulnerability. Of course, these plaintiffs have also brought claims for breach of warranty, to which comparative negligence is not a defense even as to Riley himself. In other words, Riley has a theory of recovery that is not vulnerable to any comparative negligence defense, and the comparative negligence issues in the case are therefore not a basis for devaluing his claim so disproportionately to that of other family members. Moreover, the fact that comparative negligence would not offset any award to the consortium plaintiffs does not change the fact that the consortium awards themselves would not be very large. Even with a substantial reduction to Riley’s own award on account of comparative negligence, there is no reason to predict that a jury would award Riley dramatically less than the total it would award to the consortium plaintiffs.
The court understands that the parties to the litigation itself urgently wish it to be settled and that, between themselves, they have devoted considerable time and effort to reach the present proposed settlement. However, the court finds no “unusual factors” or “unique circumstances” that would make these consortium claims more valuable than Riley’s own claims, and certainly none that would justify the grossly disproportionate allocation of settlement proceeds that has been proposed. Rather, the proposed allocation in favor of the consortium plaintiffs has been contrived for the express purpose of frustrating the workers’ compensation lien. The allocation of proceeds proposed by this petition is not the "fair allocation” required by G.L.c. 152, §15.
ORDER
For the foregoing reasons, the Petition for Approval of Settlement is DENIED.

 If one were to use the numbers in Hultin as some kind of automatic gauge for the reasonableness of an allocation, one would also have to consider other numbers at issue in Hultin. The settlement in Hultin paid $136,500 to the workers’ compensation carrier on a $469,400 lien, a payment representing 29% of the total outstanding lien. By comparison, the proposed settlement in this case would pay the insurer only $17,710 on its lien of $281,047, a payment representing only 6% of that lien. If plaintiffs wish to treat Hultin as a statistical yardstick for settlement allocation, they should perhaps consider that paying Travelers 6% of its lien is not the equivalent of paying Travelers 29% of its lien.

 Even with those extreme circumstances, the trial court in Huitín had denied the parties’ first petition for settlement, in which they proposed that Mrs. Hultin receive 90% of the settlement proceeds. The petition that was approved by the trial court was the second petition, which reduced Mrs. Hultin’s allocation down to 79% of the proceeds. Furthermore, the unusual circumstances of Mrs. Hultin’s loss caused the Appeals Court only to conclude that the trial judge’s approval of the second settlement proposal was “not clearly erroneous.” Id. Nothing in the opinion suggests that, even on those facts, the trial judge was compelled to approve the second settlement petition.

 Indeed, it is not unusual for juries to conclude that a broken bone or other such orthopedic injury has not caused any loss of consortium. Given the nature of Riley’s injury and its at best attenuated impact on his relations with his wife, there would be a distinct risk at trial that the jury would not award Mrs. Riley anything on her consortium claim.

 To date, the undersigned judge has never seen a jury award any consortium damages in the absence of an award to the injured person, and has never, even with a reduction for comparative negligence, seen a jury award an amount of damages to a consortium plaintiff that was even close to, let alone in excess of, the amount awarded to the injured person.