Tucker, Richard T., J.

BACKGROUND

The executrix of the decedent’s estate, Kathleen Curry (Curry) sued the University of Massachusetts Medical Center in Worcester, Massachusetts (the Hospital), for the wrongful death of the decedent. The case went to arbitration and Curry and the Hospital agreed to a high-low arrangement whereby, regardless of the arbitrator’s findings, the estate would be entitled to recover no more than $1.5 million and no less than $300,000. The arbitrator found no liability on the Hospital’s part, so the estate recovered $300,000 as per the high-low agreement. The decedent’s widow had been receiving death benefits from the decedent’s employer’s workers’ compensation insurer, Great American Insurance Company (Great American), and Great American sought to recover, through a workers’ compensation lien, amounts it had paid out by attaching the proceeds of the arbitration. In an order dated November 4, 2009, Judge Lemire ruled that the arbitration proceeds constituted a settlement and could therefore be attached by the workers’ compensation lien. Both sides were ordered to make proposed allocations for the purposes of determining to which portions of the proceeds the lien would attach.

DISCUSSION

Great American has proposed the following allocation: One hundred thousand dollars will be allocated to the “survival action,” i.e. to the estate’s claim for the decedent’s conscious pain and suffering before he died. The lien should attach to this amount. Of the remaining two-thirds, the decedent’s emancipated son should get $50,000, to which the lien should not attach, and the widow should get $150,000, to which the lien should attach, regardless of how much of that sum represents lost income and how much represents loss of consortium.[1]
Curry has proposed the following allocation: Sixty thousand dollars should go to the widow for loss of consortium, to which the lien should not attach. Forty-five thousand dollars should go to the emancipated son for loss of consortium, to which the lien should not attach. Forty-five thousand dollars should cover the decedent’s conscious pain and suffering, to which the lien should not attach. One hundred and ten thousand goes for attorneys fees. Another $21,048.49 covers expenses. Finally, the insurer gets the remaining $18,951.51. Neither of these allocations has a sound basis in the law.
The insurer rests its allocation on two erroneous conclusions of law. First, workers’ compensation does not pay for “conscious pain and suffering.” See Crowley’s Case, 287 Mass. 367, 375 (1934) (employee’s first experience of pain caused by strenuous work was not considered date of injury for purposes of pursuing compensation because pain alone is not compensable and employee was not incapacitated for work until several months later); see also Nason, Koziol & Wall, Workers’ Compensation §1.8, at 9 (3d ed. 2003) (“Payment is not for the injury as such or for ‘pain and suffering’ ”). Because the workers’ compensation lien attaches only to those portions of the settlement that represent compensable injuries under Chapter 152, and because “pain and suffering” is not a category of injury compensable under that *410 chapter, the lien should not attach to any such amount.
The insurer’s argument that Chapter 229, §6, read in light of Chapter 152, §1(4), entitles it to attach any amount recovered for pain and suffering is without merit. Chapter 229, §6 provides: “In any civil action brought under section two or five A, damages may be recovered for conscious suffering resulting from the same injury, but any sum so recovered shall be held and disposed of by the executors or administrators as assets of the estate of the deceased.” Chapter 152, §1(4) provides: “Any reference to an employee who has been injured shall, when the employee is dead, also include his legal representatives, dependents and other persons to whom compensation may be payable.” However, the mere fact that Curry stands in the decedent’s shoes for the purposes of Chapter 152, and that she holds the decedent’s recovery for pain and suffering under Chapter 229, does not automatically transform the injury from which such recovery flows into a compensable injury under Chapter 152.[2]
The insurer’s second erroneous assumption is that its lien attaches to all the amounts the widow recovered in settlement of her wrongful death claim, regardless of which portions of such settlement represented compensation for reasonably expected net income and which were for loss of consortium. Death benefits under G.L.c. 152, §31 are calculated at two-thirds of the deceased’s weekly wages, and do not include any payments to the deceased’s survivors for loss of consortium. Indeed, Massachusetts’ courts have consistently held that survivors’ claims for loss of consortium belong to the survivors and not the employee, and are therefore not compensable under Chapter 152. See Eisner v. Hertz Corp., 381 Mass. 127, 132-33 (1980), Wilson’s Case, 67 Mass.App.Ct 1, 7-8 (2006).
The insurer’s argument that the lien should attach to all of the widow’s recovery, simply because she had not asserted a separate claim against the Hospital for loss of consortium, puts form over substance. “In determining whether [the employee’s representative] has received double recovery, we do not focus on the dollar amounts recovered, but upon the nature of the injury asserted.” Eisner, 381 Mass. at 132. Here, though the claim was for wrongful death under Chapter 229, section 2 of that chapter allows recovery of damages in the nature of lost expected income as well as loss of “services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice,” in a word, for loss of consortium.
Yet Curry’s proposed allocation is also unsatisfactory. Not one dime of the settlement is allocated to the loss of the decedent’s income. Chapter 152, section 15 forbids the making of any settlement with a third party without “the approval of either the board, the reviewing board, or the court in which the action has been commenced after a hearing in which both the employee and the insurer have had an opportunity to be heard." Prior approval of settlements is required to guard against a scenario in which the settlement reached by an employee (or legal representative) and the third party is structured in such a way as to unfairly shield the settlement proceeds from the insurer’s lien. “[WJhen allocating the proceeds from the settlement of a third party tort action brought by an injured employee, an insurer’s right to full reimbursement of benefits it has paid to the injured employee ... or to members of his family . . . may not be compromised, abridged or equitably allocated to others so as to deprive the insurer of its lien.” Hultin v. Francis Harvey & Sons, Inc., 40 Mass.App.Ct. 692, 694-95 (1996).
Here, there was no approval because there was, arguably, no settlement until the court declared that there was, albeit without a proposed allocation. Curry and the Hospital presumably regarded neither their high-low arrangement, nor the eventual payment of $300,000, to be a settlement in the strictest sense of the word. Where normally the third parly would not have paid the estate until the board or the court approved, and the insurer had had an opportunity to be heard, the court is now faced with a fait accompli that cannot practicably be undone. This is the central difficulty of the case. While a judge may only approve or disapprove of a settlement allocation, it is not allowed to impose his or her own formula for the same. Where such allocation results in some proceeds being subject to the lien and others not, the judge must consider the factual basis for such proposed allocation in order to assess its fairness. Hultin, 40 Mass.App.Ct. at 698 n.8. In this case, the proposed allocations are radically different, and neither is fair, for the reasons discussed above. Neither are approved.

ORDER

For the foregoing reasons, the parties are ORDERED to resubmit their proposals for allocating the settlement proceeds, which should more fairly and reasonably reflect the percentages of the settlement allocable to loss of net income, to which the lien may attach, and loss of consortium, to which it may not. The court will then approve the proposed allocation that it deems most fair and reasonable, based on the record before it.

In the context of the wrongful death action, the term used herein of “loss of consortium” means the loss of consortium-like benefits recoverable under G.L.c. 229, §2, i.e. “services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice.”

This is not to say the insurer can never attach any portion of the so-called “survival action.” If the insurer pays any benefits under section 35 (partial incapacity) or section 34A (total incapacity) dunng the penod that a decedent was alive but hospitalized, it would be entitled to recover those amounts out of any settlement proceeds.