EDWARD H. WALSH & another[1] *vs.* TELESECTOR RESOURCES GROUP, INC.

No. 94-P-1088.

Norfolk. October 6, 1995. - March 27, 1996.

Present: PERRETTA, GILLERMAN, & LENK, JJ.

*Workers' Compensation Act,* Settlement agreement, Recovery from third person. *Statute,* Construction. *Contract,* Settlement agreement. *Judge.*

At a hearing on the approval of a workers' compensation settlement under G. L. c. 152, § 15, as appearing in St. 1991, c. 398, § 39, the judge's finding that the allocation of the settlement payments between the employee and his spouse was neither fair nor reasonable where the allocation was made for the primary, if not exclusive, purpose of depriving the self-insurer of its right to reimbursement was supported by the evidence [230-232]; the judge properly in his discretion made findings with respect to what a fair allocation would be [232-233].

Plaintiffs, an employee and spouse, seeking approval of a workers' compensation settlement under G. L. c. 152, § 15, were not bound by the judge's findings with respect to what would be a fair allocation of payments between the employee and spouse: where the plaintiffs objected to the judge's findings, they properly preserved their right to try the issues. [233-235]

CIVIL ACTION commenced in the Superior Court Department on February 14, 1992.

An evidentiary hearing on a settlement agreement was had before *Charles F. Barrett,* J.; a motion to place the case on a trial list was considered by *Suzanne V. DelVecchio,* J.; and a motion for entry of judgment was considered by *John C. Cratsley,* J.

*Robert V. Costello* for the plaintiffs.

*Philip C. Amaru* for New England Telephone Company.

*Cornelius J. Moynihan, Jr.,* for Telesector Resources Group, Inc.

---

[1] Mary J. Walsh.

PERRETTA, J. This appeal raises the question whether an employee and his spouse are entitled to a trial on their complaint for damages after a Superior Court judge reapportioned the allocation of amounts to be recovered by each of them under a proposed settlement agreement presented pursuant to G. L. c. 152, § 15, as appearing in St. 1991, c. 398, § 39. Concluding that parties to a proposed settlement cannot be forced to accept judicial modification of the terms of the agreement, we reverse the judgments and the order denying the plaintiffs' motion to place their complaint on a trial list.

1. *The injury.* In 1989, the employee was engaged in his duties as a splice service technician for New England Telephone Company (New England),[2] a self-insurer. He was descending from a pole on a twenty-foot extension ladder, when the ladder slipped. He was thrown to a concrete embankment and sustained injuries which included a fractured right hip, a rotator cuff tear to his right shoulder, multiple fractures to his lower left leg, and pulmonary emboli.

In their complaint against Telesector Resources Group, Inc. (Telesector),[3] the plaintiffs essentially made a products liability claim, that is, the ladder was not equipped with a "V" bar, a device used to steady a ladder against a pole. The theory of defense was comparative negligence or unreasonable use.[4] See *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 353-357 (1983). Telesector was prepared to show that the employee, contrary to New England's long-standing rule, had failed to tie the ladder at its base to the pole and that had he done so, the ladder would not have slipped notwithstanding the absence of a "V" bar.[5]

2. *The proceedings.* Based upon their assessment of the strength of the defense to their claims, the plaintiffs entered into a settlement agreement with Telesector. The essential

---

[2]New England Telephone Company is now Nynex.

[3]Telesector was formed in September 1990, as the result of the merger of Nynex Service Company and Nynex Materials Enterprises Company.

[4]The plaintiffs were allowed to amend their complaint, which contained counts based upon negligence, to add counts for breach of warranty.

[5]Although at the c. 152, § 15, hearing, the plaintiffs expressed displeasure that the self-insurer had advised Telesector (see notes 2 and 3, *supra*) of this long-standing rule, they have made, on appeal, no allegation of impropriety. See *Daly's Case*, 405 Mass. 33, 37-38 (1989).

terms of that agreement provided the employee with $5,000, all of which was to be applied to New England's lien. As of the time of the agreement, New England had paid workers' compensation benefits in excess of $194,095. On the loss of consortium claim, the employee's spouse was to receive $100,000, plus $1,000 a month for the rest of her life (expected to be about twenty-three years), payment for the first ten years guaranteed. Provision was also made for attorney's expenses ($10,708.78) and fees ($134,291.22) from the spouse's portion of the recovery.

When the settlement was presented to the Superior Court judge for approval, New England objected and asserted that the recovery had been allocated between the employee and his spouse with an eye to defeating its lien for reimbursement and a possible offset against any excess recovery.[6] See *Eisner v. Hertz Corp.*, 381 Mass. 127, 133-134 (1980) (insurer not entitled to reimbursement from damages paid for loss of consortium).

Discussion then ensued concerning the procedure to be followed under § 15. Based upon the language of the statute as amended and his review of *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. 171 (1990), and *Rhode* v. *Beacon Sales Co.*, 416 Mass. 14 (1993), the judge concluded that he was obliged to take evidence and make a finding on the merits of the settlement and the fair allocation of the amounts payable to the employee and his spouse and to determine the amount, if any, to which New England was entitled out of the settlement.

Over the plaintiffs' objection, an evidentiary hearing immediately followed this discussion. Only two witnesses testified, the employee and a senior supervisor for Telesector's insurance carrier. At the conclusion of the evidence, the judge expressed his dismay about the lack of helpful information provided him. He specifically noted the absence of expert testimony and legal analysis regarding the fairness of the allocation settled between the employee and his spouse. He accepted as factual the "belief" of plaintiffs' counsel that the "normal expected consortium settlement is in the range of [twenty percent] of the amount set aside for the injured

[6]The term "excess" is defined by § 15, as appearing in St. 1991, c. 398, § 39, as "the amount by which the gross sum received in payment for the injury exceeds the compensation paid under this chapter."

spouse." The agreement, however, allocated ninety-nine percent of the settlement to the spouse.

Although the judge acknowledged the "considerable strength" of Telesector's defenses to the employee's claims of negligence and breach of warranty, he nonetheless concluded that the "allocation was made, principally, if not exclusively, for the purpose of depriving the [workers'] compensation carrier of the benefits of the settlement as required by . . . § 15." Based upon the evidence of the extent of the injuries and their effect upon the health and general well-being of the employee and his spouse, as well as their life expectancies, the judge found that the proposed settlement was fair and reasonable "in amount" but not in allocation and that a fair allocation of the recovery would be seventy percent to the employee and thirty percent to his spouse.[7]

There is nothing in the judge's memorandum of decision or the docket entries that states or reflects that he either approved or disapproved the settlement agreement presented to him. Additionally, at the time the memorandum was entered on the docket both the memorandum and the docket entries were silent as to entry of judgment on the agreement. About a month after the date of the decision, the employee and his spouse filed a motion asserting that their request for approval of the agreement had been denied and asking that the case be placed on a trial list. New England opposed the motion on the ground that the plaintiffs had sought approval of the agreement, that the agreement had been approved in amount but not in allocation, and that, therefore, the plaintiffs could not now proceed to trial. A judge other than the one who presided at the § 15 hearing denied the motion. A third judge allowed the plaintiffs' subsequent motion for entry of judgment in accordance with the terms set out in the first judge's memorandum, that is, $291,200 for the employee and $124,800 for his spouse. The plaintiffs then filed their notice of appeal from the judgments and the order denying their motion to proceed to trial.

3. *The statute.* We see no error in the first judge's conclu-

---

[7]More specifically, the judge found that a fair allocation of the total settlement of $416,000 "would be" $291,200 to the employee and $124,800 to his spouse, less attorney's fees and expenses "which should also be allocated in accordance with the ratio of" seventy percent to the employee and thirty percent to his spouse.

sion that, in view of the terms of the settlement agreement presented to him and New England's objections, he was required by § 15 to take evidence and, based upon that evidence, to determine what would constitute a fair allocation of the recovery between the employee and his spouse. As appearing in St. 1991, c. 398, § 39, and as here pertinent, § 15 provides:

"At [the] hearing [on approval of a settlement] the court shall inquire and make a finding as to the taking of evidence on the merits of the settlement, on the *fair allocation of amounts payable* to the employee and the employee's spouse . . . and any other member of the employee's family or next of kin who may have claims arising from the injury for which are payable, under this chapter in which the action has been commenced after an opportunity has been afforded both the insurer and the employee to be heard on the merits of the settlement and on the *amount, if any, to which the insurer is entitled* out of such settlement by way of reimbursement, and on the amount of excess that shall be subject to offset against any future payment of benefits under this chapter by the insurer, which amount shall be determined at the time of such approval. In determining the amount of 'excess' that shall be subject to offset against any future compensation payment . . . the court in which the action has been commenced shall consider the *fair allocation of amounts payable to and amongst family members* who may have claims arising from the injury for which said compensation is payable. In the case of a settlement by agreement by the parties to and during a trial of such an action at law, only the justice presiding at the trial shall have and exercise, relative to the approval of such settlement by agreement and to the protection of the rights and interests of the employee, his family members, and the insurer, the powers granted in the preceding sentence. . . ." (Emphases added.)

Proceeding on the premise that the Legislature is presumed to have knowledge of court decisions, see *MacQuarrie* v. *Balch*, 362 Mass. 151, 152 (1972), we accept the parties' view that the 1991 amendment to § 15 is a legislative response to *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. at 176-177. There the court held that where a settlement agreement provided the insurer with full reimbursement in discharge of its statutory lien, the insurer was not entitled under

§ 15 (as in effect prior to St. 1991, c. 398, § 39) to judicial consideration of its claim that an offset against the excess of the settlement amount allocated to the employee should be allowed as protection against potential future claims for compensation. If, however, the employee were to assert further claims for benefits against the insurer after the offset had been exhausted, *then* the insurer could "litigate the question whether further payment would constitute double payment to [the employee] because money allocated to his wife and children in the settlement of the third-party action . . . was, in part, not payment for their loss of consortium but instead was payment to [the employee], through nominees, for his separate injuries." As can be seen from the express language of § 15, the statute now requires that the amount of any excess subject to offset against future compensation is to be determined at the time of the approval of the agreement.

Although we agree with the plaintiffs that § 15 does not give a judge the discretionary power to reapportion fair and reasonable allocations between the employee and his family members for the purpose of creating an excess for the benefit of the insurer, see *Rhode* v. *Beacon Sales Co.*, 416 Mass. 14 (1993), the judge here found that the allocations were neither fair nor reasonable. Those findings are supported by the evidence, and we do not disturb them.

Contrary to the plaintiffs' assertion, however, there is nothing in the statute that expressly or impliedly (see *Johnson's Case*, 318 Mass. 741, 746-747 [1945]) required the judge, because of the absence of an excess recovery, to accept allocations that he determined were made for the primary, if not exclusive, purpose of depriving the insurer of its right to reimbursement and a possible offset. Were it otherwise, settlement agreements might rarely contain provisions producing excess recoveries. Rather, the statute requires a judge to protect the rights of the insurer as well as the employee and his family members by taking into consideration the settlement agreement as a whole. Where the allocations are found to be fair and reasonable, the judge determines the amount of reimbursement to which the insurer is entitled for benefits it has paid and the amount of any excess recovery subject to offset against any future payment of benefits. As for arriving at a determination of the amount of the excess available for offset, see *Richard* v. *Arsenault*, 349 Mass. 521, 524-525

(1965); *Hunter* v. *Midwest Coast Transport, Inc.*, 400 Mass. 779, 784-785 (1987).

4. *Effect of the judge's allocations.* Our conclusion, that a judge is not bound by the allocations agreed upon among the parties even in the absence of an excess recovery, brings us to the question of the effect of the reapportionments made by the judge. New England argues[8] that, because the plaintiffs did not withdraw their petition for approval of the settlement agreement before the taking of evidence, the reallocations made by the judge are binding upon the parties to the agreement.[9] It claims that once the judge expressed the view that the statute required him to determine the fairness of the allocations, the plaintiffs should either have withdrawn their petition for approval of the agreement or have reserved the right to petition for approval after the judge made his determination.

There is nothing in the statute itself to support the proposition that the Legislature has given a judge the authority to bind parties to settlement terms to which they have not agreed. Such a proposition would not only greatly discourage settlement agreements, it would contradict the basic principle of law that a party cannot be bound to essential and material terms of a contract to which he has not agreed. See, e.g., *Lonnqvist* v. *Lammi*, 240 Mass. 371, 373-374 (1922); *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.*, 283 Mass. 383, 388 (1933).

In *Evans* v. *Jeff D.*, 475 U.S. 717, 726-727 (1986), the Court stated, in respect to a settlement agreement presented for judicial approval in circumstances analogous to the present: "Rule 23(e) [of the Federal Rules of Civil Procedure] wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which

[8]See *DiMartino* v. *Quality Indus. Propane, Inc.*, 407 Mass. at 174.

[9]Telesector makes a similar argument. Because the issue has been raised and argued by the plaintiffs and New England, we do not consider whether Telesector, a party to the proposed settlement, is judicially estopped from making its argument, as contradictory to its original position, or whether its interest is only in preserving the agreed upon total recovery irrespective of any allocations. See *Correia* v. *DeSimone*, 34 Mass. App. Ct. 601, 603-604 (1993); *Pemstein* v. *Stimpson*, 36 Mass. App. Ct. 283, 293 (1994).

they have not agreed. Although changed circumstances may justify a court-ordered modification of a consent decree over the objections of a party after the decree has been entered, and the District Court might have advised petitioners and respondents that it would not approve their proposal unless one or more of its provisions was deleted or modified, Rule 23(e) does not give the court the power, in advance of trial, to modify a proposed consent decree and order its acceptance over either party's objection." A similar principle has been applied in respect to agreements in settlement of individual suits. See *Ozyagcilar* v. *Davis*, 701 F.2d 306, 308 (4th Cir. 1983); *Callie* v. *Near*, 829 F.2d 888, 890 (9th Cir. 1987); *Wang Laboratories, Inc.* v. *Applied Computer Sciences, Inc.*, 958 F.2d 355, 359 (Fed.Cir. 1992).

Moreover, the judge himself did not profess to have any authority to bind the parties. During the colloquy prior to the taking of evidence, the judge expressed serious reservations about the value the parties had assigned to the consortium claim. There was also lengthy argument about the options available to the judge under § 15 in light of his qualms about and New England's objections to the agreement. Nothing, however, was said by the judge during the colloquy that was indicative of an intention on his part to make a binding modification of the agreement. Rather, the judge ruled only that he read the statute to require him to take evidence on the merits of the settlement and the fairness of the allocations and to determine the amount due the insurer. He ordered the parties to go forward and noted the plaintiffs' objection to his ruling. We see no waiver or procedural misstep by the plaintiffs that would lead us to conclude that the plaintiffs had agreed to be bound by any modification of the terms of the agreement that the judge might make.

Consistent with his understanding of the obligations imposed upon him under § 15, the judge found that the proposed settlement was fair and reasonable "in amount" but not in allocation, and he made a finding as to what would constitute a fair and reasonable allocation. Although it indirectly appears that there would be an excess recovery if his allocations were to control, the judge made no direct and express determination of the "amount of excess that shall be subject to offset against any future payment of benefits," a determination that § 15 requires be made at the time of "such

approval" of the settlement agreement. Significantly, the judge did not expressly approve or disapprove the settlement agreement, nor did he make any order for entry of a judgment.

As we read the statute, the transcript of the hearing, and the judge's memorandum of decision, the judge did exactly what he was required to do. Upon receipt of the judge's decision, it was open to the parties to accept the judge's findings and submit for his approval a newly drafted settlement agreement reflecting his findings, see *Giolito* v. *Dow Corning Corp.*, 780 F.Supp. 876, 878 (D.Mass. 1992), or the plaintiffs could have done as they did, chosen to try the case. See *Evans* v. *Jeff D.*, 476 U.S. at 727.

5. *Conclusion.* It follows from what we have said that it was error to deny the plaintiffs' request to proceed to trial. Accordingly, the judgments are vacated, the order denying the plaintiffs' motion to place the case on a trial list is reversed, and the matter is remanded to the Superior Court for trial.

*So ordered.*