EUGENE T. LANE, executor,[1] & others[2] vs. PLYMOUTH
RESTAURANT GROUP[3] & another.[4]

Plymouth. October 7, 2003. - December 4, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Workers' Compensation Act,* Settlement agreement, Action against third
person. *Statute,* Construction.

This court concluded that the plain language of G. L. c. 152, § 15, which
requires a hearing and court approval of any settlement of a third-party tort
action in which a workers' compensation insurer has a lien, also requires
the judge at such a hearing, once the workers' compensation insurer has
put forth a credible argument that the settlement allocation was structured
to defeat its lien on the settlement proceeds, to take evidence on the issue,
i.e., to permit the insurer to cross-examine witnesses and to present
evidence. [471-474]

CIVIL ACTION commenced in the Superior Court Department on
June 19, 1997.

A proceeding for approval of a settlement agreement was
heard by *Christopher J. Muse,* J., and entry of a judgment of
dismissal was ordered by *Paul E. Troy,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Richard A. Zucker* for Managed Comp Insurance Company.

*Conrad John Bletzer, Jr. (James M. Murphy* with him) for the
plaintiffs.

COWIN, J. General Laws c. 152, § 15, requires a hearing and
court approval of any settlement of a third-party tort action in
which a workers' compensation insurer has a lien. In this case,
we are asked to decide whether, at such a hearing, a judge must

---

[1] Of the estate of Delores Lane.

[2] Francis Lane; Robert Lane; Eugene Lane, Jr.; Daniel Lane; and Eugene T.
Lane, individually.

[3] Doing business as Handlebar Harry's.

[4] Robert B. Senior.

allow a workers' compensation insurer to present evidence regarding the fair allocation of settlement proceeds among the insurance beneficiaries. A Superior Court judge approved the settlement after denying Managed Comp Insurance Company an opportunity to cross-examine the plaintiffs and present evidence regarding the allocation in the settlement petition. Managed Comp appealed from the judge's decision, and we transferred the case to this court on our own motion. We conclude that the judge erred. We vacate and remand the case to the Superior Court for further proceedings.

The facts underlying the claim are not in dispute. Delores Lane (Delores), a visiting nurse, was struck and killed by an automobile whose driver was operating while under the influence of alcohol. At the time of the accident Delores was leaving a client's home. Her husband, Eugene T. Lane (Lane), received $81,335 in death benefits and continues to receive $316.62 weekly from Managed Comp, Delores's workers' compensation insurer. Lane, as executor of Delores's estate, brought a civil action for wrongful death against the driver, Robert B. Senior,[5] and the bar that served him, Plymouth Restaurant Group, doing business as Handlebar Harry's. More than four years after filing the wrongful death action and on the day trial was set to begin (after three prior trial dates), Lane amended his complaint, adding his four sons as plaintiffs. The amended complaint also included two counts of negligent infliction of emotional distress for each of the now five plaintiffs.[6]

Two months later, the parties agreed to settle the lawsuit for $237,500 and submitted a proposed settlement for court approval pursuant to G. L. c. 152, § 15. The settlement petition divided the proceeds equally among the five plaintiffs, twenty per cent each. Each plaintiff's portion was equally allocated between the wrongful death and the negligent infliction of emotional distress claims. According to the parties, this apportionment of the proceeds made only ten per cent of the total

---

[5]Senior subsequently was convicted of vehicular homicide and was incarcerated.

[6]The defendants did not object to the motion to amend the complaint at this time, reserving the right to object if settlement negotiations failed and the case went to trial.

settlement amount, $14,904.90, representing Lane's damages for wrongful death, available to reimburse Managed Comp. (The damages allocated to the four sons and the damages attributable to Lane's emotional distress claim were not subject to the insurer's lien.)[7] Managed Comp opposed the settlement and claimed that the allocation was an attempt to defeat its lien. (The sum of $14,904.90 was less than eighteen per cent of the lien.)

At the settlement hearing, Lane testified that the allocation was fair because he and each of his sons suffered equally from Delores's death. Managed Comp requested to cross-examine Lane and to question his sons and proffered the type of questions it sought to pose to Lane. However, the judge did not allow Managed Comp to cross-examine Lane or to present other evidence. The judge stated that, given the small amount of proceeds available, each plaintiff would be receiving only a fraction of the actual loss suffered. The judge found that the settlement allocation was fair and approved the settlement.

Managed Comp claims that the judge's approval of the settlement violated G. L. c. 152, § 15, because it was denied the opportunity to cross-examine Lane and to present evidence regarding the fairness of the settlement allocation. We agree that the judge erred in this regard.

The relevant provisions of G. L. c. 152, § 15, read:

> "[N]o settlement by agreement shall be made with such other person without the approval of . . . the court in which the action has been commenced after a hearing in which both the employee and the insurer have had an opportunity to be heard. At such hearing the court shall inquire and make a finding as to the taking of evidence on the merits of the settlement, on the fair allocation of amounts payable to the employee and the employee's spouse, children . . . who may have claims arising from the injury for which are payable, under this chapter in which the action has been commenced after an opportunity

---

[7]The issue of which claims are subject to the lien has not been contested or briefed, and we therefore accept for purposes of this opinion the representation of all parties regarding which proceeds are available to satisfy Managed Comp's lien.

has been afforded both the insurer and the employee to be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement . . . ."

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all the words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934), citing *Commonwealth* v. *S.S. Kresge Co.*, 267 Mass. 145, 148 (1929).

We have consistently recognized that § 15 is designed to reimburse the workers' compensation insurer and to prevent the employee's double recovery. *Rhode* v. *Beacon Sales Co.*, 416 Mass. 14, 17 (1993); *Eisner* v. *Hertz Corp.*, 381 Mass. 127, 131 (1980); *Richard* v. *Arsenault*, 349 Mass. 521, 524 (1965). General Laws c. 152, § 15, provides that the "sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee." "[A]n insurer's right to full reimbursement of benefits it has paid to the injured employee . . . may not be compromised, abridged, or equitably allocated to others so as to deprive the insurer of its lien." *Hultin* v. *Francis Harvey & Sons*, 40 Mass. App. Ct. 692, 695 (1996). Unless an excess amount is recovered, "the entire recovery is for the insurer." *Rhode* v. *Beacon Sales Co.*, *supra* at 19.

The plain words of the statute provide the employee and the workers' compensation insurer an opportunity to be heard ("after a hearing in which both the employee and the insurer have had an opportunity to be heard"). The statute gives the insurer "an opportunity to be heard and to challenge the proposed [settlement] allocation." *Corbett* v. *Related Cos. Northeast*, 424 Mass. 714, 721 (1997). In certain circumstances, including those here, an opportunity to be heard is meaningless without cross-examination of witnesses or presentation of evidence. The statute further provides that "[a]t such hearing the court shall inquire and make a finding as to the taking of

evidence on the merits of the settlement, on the fair allocation of amounts payable to the employee and the employee's spouse, children . . . ." We interpret this language to mean that once the insurer puts forth a credible argument challenging the settlement allocation, the judge must take evidence on that issue, i.e., permit the insurer to cross-examine witnesses and to present evidence. *Walsh* v. *Telesector Resources Group, Inc.*, 40 Mass. App. Ct. 227, 231 (1996) (judge "was required by § 15 to take evidence and, based upon that evidence, to determine what would constitute a fair allocation of the recovery between the employee and his spouse"). When taking evidence on the fairness of a settlement allocation, the judge should consider, among other things, the relative merits and comparative worth of the plaintiffs' claims. *Hultin* v. *Francis Harvey & Sons, supra* at 698-699. "Absent countervailing factors . . . a settlement agreement of an employee's third-party tort action that has been submitted to the Superior Court for approval, pursuant to G. L. c. 152, § 15, wherein the bulk of the settlement proceeds has been allocated to [claims for which the insurer may not be reimbursed] . . . must be eyed by the court with a healthy dose of skepticism." *Id.* at 699.

Settlement hearings pursuant to § 15 should not become full-fledged trials, but both the employee and the insurer should be permitted a true "opportunity . . . to be heard." Further, as the Appeals Court has stated, "the better course — and one more in keeping with the statute's intent" is for the judge to make subsidiary findings of fact that lead him to conclude that the settlement allocation is "fair." *Id.* at 697.

Here, the judge did not comply with the statute. Managed Comp met its threshold burden by claiming that the settlement allocation was structured to defeat its lien on the settlement proceeds, see *Walsh* v. *Telesector Resources Group, Inc., supra* at 232, as evidenced by the fact that the emotional distress claims were added four years after the suit was begun, and by suggesting relevant questions it might pose.[8] Once Managed Comp had done so, the statute mandated that the judge hear

---

[8]Counsel for Managed Comp raised this issue at more than one point during the hearing, stating, among other things, "[I]t's clear from the way this settle-

evidence regarding the fairness of the allocation. Managed Comp should have been afforded the opportunity it requested to cross-examine Lane, who testified that the settlement allocation was a fair representation of his family's losses, and to call Lane's sons as witnesses. Managed Comp proffered the types of questions it would have asked Lane,[9] at least some of which were relevant to determining the comparative worth and merits of the husband's and sons' claims, such as the relationship between Lane and his wife and between each of the sons with his mother.[10] We vacate the allowance of the petition for approval of settlement and remand the matter to the Superior Court for further proceedings consistent with this opinion.[11]

*So ordered.*

---

ment was drawn up that they are attempting to subvert" [G. L. c. 152, § 15]. Several factors strongly indicate that this was the case: the plaintiffs amended their complaint four years after filing, far beyond the permissible time for filing motions to amend, and shortly before settling; the amendment added five new plaintiffs and ten counts of negligent infliction of emotional distress, which, according to the parties, were not subject to the insurer's lien, and these claims for negligent infliction of emotional distress were valued at fifty per cent of the lawsuit. Further, the defendants agreed not to challenge the amendments so long as the case was settled before a jury verdict (indicating that the complaint was amended in anticipation of structuring the settlement agreement).

[9] We do not suggest that all the issues Managed Comp discussed were relevant to determining the fairness of the allocation, simply that some of them are the type that might be asked at a hearing of this nature.

[10] For example, although all four of Lane's sons are emancipated adults, two of them lived at home with their parents at the time their mother was killed. Managed Comp's questioning of the sons was relevant to assessing the comparative merits and worth of each son's claim.

[11] Because of our holding, we need not reach Managed Comp's constitutional arguments.