Ricciardone, David, J.
At issue is whether the plaintiffs proposed allocations as between themselves and the Workers’ Compensation carrier in their third-party settlement are fair and reasonable thereby justifying the court’s approval of the settlement. See, G.L.c. 152, §15; Lane v. Plymouth Restaurant Group, 440 Mass. 469, 473 (2003). For reasons that follow, the court finds that the allocations fall just short of this standard under the circumstances of this case, and therefore the petition for approval is DENIED.
BACKGROUND
Plaintiff/employee Robert F. Fortin was 68 years old when he slipped on icy conditions in the freight yard where he worked on December 18, 2008. In trying to break the ensuing fall, he felt his right arm snap. He was unable to get up off the ground for 15 minutes where he lay in excruciating pain. Ultimately he was able to get up and get himself to the emergency room at Heywood Hospital in Gardner, Massachusetts. There, Peter Brassard, M.D., an orthopedic surgeon, injected and set Mr. Fortin’s arm, a procedure which caused more pain. Subsequent x-rays showed the need for surgery. Dr. Brassard performed an open reduction internal fixation of the fracture about a week later. The operation required general anesthesia; Mr. Fortin was hospitalized for 2-3 days. He was prescribed Vicodin for the pain, but it did not appreciably lessen it, according to the plaintiff. He underwent physical therapy at Heywood following the surgeiy.
*334 In the aftermath of his surgery, Mr. Fortin suffered from numbness in his right hand and pain in the area of his forearm and elbow. Mr. Fortin reports that by May of 2009, he “was sent to three different doctors” because of his on-going complaints and inability to work. An EMG study at that time showed nerve damage which ultimately required two more surgeries by Dr. Brassard (in August of2009 and January of 2010), followed by another three months of PT.
Before his final operation, Mr. Fortin reports a period where his fingers “locked up” and numbness from his fingers to his elbow. To this day he has numbness extending from his middle, ring, and baby fingers through his wrist to the elbow. This severely limits the amount of weight he can hold in his right hand. He estimates he can hold no more than a half-gallon of milk at a time and then only for a few minutes. [1]
The right-handed plaintiff never returned to work after being discharged from treatment in 2010. He states that he still has pain in the right arm and virtually “no use” of his right hand. The plate in his right arm is sensitive to the cold, and even when it is not cold, he can feel it in general, depending on how he moves his arm. Mr. Fortin has trouble signing his name to documents (although he tries to write left-handed). He relies on his wife to cut his food, and sleeps in a recliner because his arm will go to sleep if he uses the bed. He testified to giving up activities he enjoys like fishing and yard work. He states that he has basically given up taking showers because of his restrictions with the use of his right hand. The plaintiff also states that his “wrist will hurt for days if he tries to do anything.” Nevertheless, Mr. Fortin has not sought out any further treatment, therapy, or pain medications for the last several years, and does drive a car.
Although the plaintiffs is “not a run-of-the-mill broken arm” as counsel argues, some of the claimed limitations appear overstated, or at least inconsistent, to the undersigned.
The plaintiff received Workers’ Compensation under G.L.c. 152 through September of 2010 when he entered into a lump sum settlement with his employer in which liability for ongoing medical payments was not redeemed. A fifteen per cent permanent disability was also established (G.L.c. 152, §36). Through this petition, Mr. Fortin seeks approval of a partial settlement with one of the parties to this pending third-party lawsuit, i.e., Powell Stone and Gravel. The parties agree to the amount of $70,000 in settlement, and both sides give reasonable grounds for avoiding their exposure at trial. Although Powell’s insurer (Liberty Mutual) agrees with this amount, they disagree that the allocations thereunder are fair. In this proposed settlement, Mr. Fortin receives $35,000 for pain and suffering not covered under the Workers’ Compensation statute, Mrs. Fortin receives $17,500 for her loss of consortium claim, and Liberty receives the balance, generally equal to Mrs. Fortin’s share.[2] Liberty Mutual proposes that the Fortins split 50% of the settlement (i.e., receive $17,500 each) while the insurer receives the other 50% ($35,000). Liberty Mutual’s statutoiy lien for payments made is over $72,000.
DISCUSSION
G.L.c. 152, §15 provides that a sum recovered by an injured employee from a third party “shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee.” Our courts have been called upon to determine whether allocations under third-party settlements fairly reflect the percentage sum attributable to lost income which is subject to the insurer’s lien versus those sums attributable to claim(s) not compensable under chapter 152, to which the lien does not attach. Loss of consortium, and claims for pain and suffering are examples of the latter category. See, Eisner v. Hertz Corp., 381 Mass. 127, 132-33 (1980), and Curry v. Great American Ins. Co., 80 Mass.App.Ct. 592, 596-97, respectively. G.L.c. 152, §15 provides that “both the insurer and the employee ... be heard on the merits of the settlement and on the amount, if any, to which the insurer is entitled out of such settlement by way of reimbursement, and on the amount of excess that shall be subject to offset against any future payment of benefits . . . [considering] the fair allocation of amounts payable to and amongst family members who may have claims ...”
Here, there is no challenge to the merits of the settlement, the amount of the settlement, the apportioning of attorneys fees, or the allocation for Mrs. Fortin’s loss of consortium claim. The parties request resolution therefore primarily through consideration of the fairness of the allocation for the plaintiff/employee’s pain and suffering as well as any rights Liberty has to offset future payments of workers’ compensation.
The parties have stipulated that allocating what amounts to 25% of the total settlement to the consortium plaintiff in this case is fair. The court finds this important. Mr. Fortin may have exaggerated his pain and suffering a bit, but he did rely heavily on his wife especially in those first two years after his injury. She would have given up much in the way of her own enjoyment of life to help him deal with, and to come to terms with herself, his recovery and limitation.
Once this consortium benchmark is established, it would be unreasonable here to consider the employee plaintiffs harm to be compensable in an amount less than or equal to the consortium plaintiffs. In fact, courts should eye third-party settlements that significantly overallocate for consortium claims “with a healthy dose of skepticism,” except for example, where there is the probability of a high degree of comparative negligence underlying the employee plaintiffs third- *335 party claim. Huitin v. Francis Harvey & Sons, Inc., 40 Mass.App.Ct. 692, 698-99 (1996).
Here, again, the parties have both argued the reasonableness of the settlement. Both sides acknowledge exposure. .There was no evidence of an excessively high risk of comparative negligence as in Huitín, supra (even though in a snow/ice case this must be considered a factor). This analysis nudges the court toward a more traditional view of Mr. Fortin’s claim for pain and suffering, i.e., that it is greater than the consortium claim in light of all the facts found above.
The court has not heard any compelling evidence to conclude that there is a realistic need to offset due to future payments of benefits, but is mindful of the language of G.L.c. 152, §15 requiring a fair consideration of the insurer’s overall right of recovery in the unique circumstances of the workers’ compensation third-party action.
On the facts of this case, the undersigned concludes that the plaintiff employee’s claim for pain and suffering should be no greater than the insurer’s recovery after the consideration of the consortium plaintiffs claim.[3]
ORDER
For the reasons stated, the plaintiffs’ petition for approval of the third-party settlement is DENIED.

The plaintiff later specified that he could hold “2 to 3 pounds for a short periods.”

Less $1,166.66 calculated as “excess” under G.L. 152, §15.

Although limited to accepting or rejecting the parties’ proposed allocations, and purely in the spirit of giving the parties a “disinterested observation as to a different allocation,” Huitín, supra at note 8, the court’s split on the facts of the case would be 25% to consortium claimant, 37.5% to employee claimant, and 37.5% to insurer.