Curran, Dennis J., J.
FINDINGS OF FACT
Procedural Status
On November 4, 2008, Douglas Lebel suffered a traumatic brain injury when he fell through an open floor under construction. This decision addresses the issue of the apportionment of monies under the settlement agreement and the all-too-often lack of sensitivity for loss of consortium claims.
After a full evidentiary hearing, the settlement petition filed by the plaintiffs has been approved.
Background
Douglas and Laurie Lebel have known each other for ovér 30 years, been married for 26 of those years, and raised four daughters. They met through work. Mr. Lebel was a successful businessman; Mrs. Lebel was an executive recruiter. Both worked hard, in fact Mrs. Lebel opened her own children’s clothing store.
Mrs. Lebel has characterized their marriage as a partnership. They supported each other’s businesses, sharing the burden of their family’s financial security from the beginning. They worked for everything they had. Raising four daughters, providing a stable home, and nurturing their 30-year relationship demanded a strong, mutual commitment to each other and their family.
After their children reached adulthood (two daughters have married, and two are now in their early twenties), the Lebels sold their home to the Cleaiys. The Clearys decided to renovate it and hired Tim Pearson as their general contractor. Mr. Pearson contracted David Matthews to remove and install a new kitchen floor. On November 4,2008, Mr. Matthews and Mr. Gould, a subcontractor, removed the plywood subfloor. They left the insulation between the floor joists and simply laid craft paper between the joists.
Mr. Lebel visited his family’s previous home to see the renovations and was invited in to do so. He had raised his family in that house. He found craft paper covering what had been his kitchen floor and entered the room to look at the renovations. He stepped on and ripped through the craft paper, slammed his head on a floor joist, and crumpled to the ground on the basement floor. He suffered a traumatic brain injury and a “blowout” orbital fracture, which severely damaged his eyebrow and upper cheekbones. He has required multiple surgeries, hospital visits and admissions, as well as his wife’s constant attention.
Periods of Incapacity/Compensation Paid
Mr. Lebel’s injuries incapacitated him. His brain injury and emotional stress from this incident have permanently altered his life. The workers’ compensation carrier did not accept the case, but still paid $62,098.61 for indemnity and medical expenses. There is also a lien from the health insurance carrier for $36,626.34.
The Caregiver’s Burden
Mr. and Mrs. Lebel have spent 26 years of their marriage depending on each other for love, support, and companionship.
Nicholas Christakis, Ph.D., a professor at Harvard Medical School, has written that “(when pleople are interconnected, [ ] their health is interconnected.” His co-author, Paul Allison, Ph.D., professor and chair of the University of Pennsylvania Department of Sociology, conducted a study, “Mortality after the Hospitalization of a Spouse,” in which they found that “the more a disease impairs the physical and mental functioning of a person the more harm it does to the health of the spouse.”[1]
Marital interdependence spans every aspect of one’s life: parenting; financial responsibility; friendships; as well as health, sexual, and emotional intimacy. It ought to be respected and accorded the deep emotional bonds created. The marital relationship also evolves. Long years together deepen the initial attraction between a husband and wife, and shapes their shared experience. Their daily routine, what television programs they may watch, what books they enjoy, their social lives, and their relationship to family and friends are all defined by their marriage. Mr. and Mrs. Lebel spent 26 years before his catastrophic injury learning to live with and for each other. Mr. Lebel’s injuries were not simply physical; the insult to his marriage was palpable.
On November 4, 2008, Mr. Lebel’s traumatic brain injury irrevocably changed his relationship with his *324 wife and children. As a husband, he contributed to his family’s financial security, helped his wife with household chores, spent time with their children and friends, shared many meals, and engaged in more intimate moments. In short, he provided his wife with irreplaceable support, companionship, and love.
His injuiy has now made these activities impossible. He can no longer work. He has been hospitalized on innumerable occasions, undergone several surgeries, and sustained a permanent loss of function. These traumatic injuries have not only stopped him from physically engaging in his marriage, but have also damaged him emotionally. He is almost always depressed, causing him great frustration or indeed, anger. He was a successful businessperson, nurturing father, and attentive husband; but his physical incapacity has caused deep mental anguish. His life as a man — and the nature of his marriage — has changed forever.
Her husband’s injuries have laid a heavy burden on Mrs. Lebel. Everything they built fell apart; their medical bills and his loss of income destroyed their credit. She was forced to close her business of 25 years to save their house. Their relationship has dramatically changed. She foregoes any hope of sexual intimacy with her husband, struggles to maintain their social life, is the sole support for their four daughters, and maintains their home alone. She devotes her attention and energy to taking care of her husband, with his occasional comfort as a transitory reward.
In marriage vows, husbands and wives agree to support each other in good times and in bad, in sickness and in health. Mrs. Lebel has not shirked her obligation; nor had Mr. Lebel. She has chosen to live her vows of marriage, but these significant injuries have placed a heavy burden on her. The traumatic injury sustained by the defendant’s negligence has forced Mrs. Lebel to be a caretaker, rather than a partner, far too early in their marriage. She has, obviously, suffered a significant loss of consortium.[2]
RULINGS OF LAW
Under Curry v. Great American Insurance Company, 80 Mass.App.Ct. 582 (2011), the Lebels propose that 75% of the settlement funds be allocated to Mrs. Lebel for her loss of consortium and 25% to Mr. Lebel. He faces the real probability at trial that the defense would have asserted that his fall was caused by his own negligence, presenting the possibility in the current jury climate that he could recover nothing. Although his negligence may have been a factor at trial, Mrs. Lebel’s case is subject to no such constraint. Under Curry, and Hultin v. Harvey & Sons, Inc., 40 Mass.App.Ct. 692 (1996), this allocation is both fair and appropriate.
Indeed, at the settlement hearing, the insurers agreed in open court to the plaintiffs’ settlement petition, which involves a number of distributions and allocations.
The total of the proposed partial party settlement amounts to $380,000. The defendant Pearson (Mark-wood) will pay $350,000 and both the Clearys and Mr. Gould will contribute $15,000. Mr. Matthews (Bay Timber) is not participating in this partial settlement. Thus, the court approves the following distribution of the settlement proceeds:
Attorneys Fee (36.5% — see Exhibit 1): $138,700.00
Attorneys’ Costs (see Exhibit 2) $ 22,987.36
Net to Mrs. Laurie Lebel: $163,734.48
(Net after Attorneys Fees and expenses = $218,312.64 x 75%)
Net to Mr. Douglas Lebel: $ 34,578.16
(Net after Attorneys Fees and expenses = $218,312.64 x 25%)
Worker Compensation Lien Partial Repayment: $ 10, 000.00
(reduced from $62,098.61 — see Exhibit 3) Health Care Lien Partial Repayment: $. 10 000.00
(reduced from 36,626.34 — see Exhibit 4) Total Settlement: $380,000.00
Aside from the payments made by the settling defendants (Pearson/Markwood, the Clearys and David Gould), they and/or their insurers are discharged from any further obligation to pay future/remaining liens, fees, or disbursements. Further, the Lebels have agreed to hold these settling defendants harmless for payment of those liens. Any future payment of liens will be deducted from funds obtained as a result of the possible settlement or verdict of the remaining case against Mr. Matthews (Bay Timber).
Since the spouse’s loss of consortium is not a compensable injury under G.L.c. 152, the workers’ compensation insurer’s lien for benefits provided under that statute does not apply to that portion of the settlement that has been allocated to a non-employee spouse for loss of consortium. Bongiorno v. Liberty Mutual Ins. Co., 417 Mass. 369 (1994); Walsh v. Telesector Resources Group Inc., 40 Mass.App.Ct. 227, 229 (1996). The medical payments issued will also not be extended to non-employee spouse’s allocation of the settlement. For this reason, the entirely of the workers’ compensation and health insurance liens have been deducted from Mr. Lebel’s portion of the settlement. The Curry case specifically addresses the issues of allocation to a spouse in a third-party settlement of a workers’ compensation claim.
The workers’ compensation insurer will receive, as has been agreed, nearly 25% of its entitlement. Such an allocation is neither unfair to the insurer nor an abridgement or abrogation of their rights under G.L.c. 152, §15. Moreover, it is eligible to receive additional recoupment if Mr. and Mrs. Lebel prevail at trial against Mr. Matthews.
Based on this allocation, the workers’ compensation carrier shall pay 42.5% of any benefits which may become due until the employee has been reimbursed for his share of attorneys fees and costs in the amount of $13,989.16 and the workers’ compensation carrier *325 has exhausted its offset of $18,915.23. Thereafter, the workers’ compensation insurer will pay 100% of any G.L.c. 152 benefits which become due, in accordance with Hunter v. Midwest CoastTransport, Inc. et al., 400 Mass. 779 (1987), if the employee establishes an entitlement to future workers’ compensation benefits.
ORDER
This settlement is in the best interests of Mr. and Mrs. Lebel and the insurers. Many liability issues exist. There is also a pending trial against the remaining defendant and the possibility of additional recovery for Mr. and Mrs. Lebel, as well as for the workers’ compensation carrier and the health insurer.
For these reasons, and with the express consent of the insurers, the settlement is APPROVED.

New England Journal of Medicine, February 2006. 354:719-730.

Mrs. Lebel’s loss of consortium claim is not subject to the issue of Mr. Lebel’s potential comparative negligence. Feltch v. General Rental Co., 383 Mass. 603 (1981). Conversely, Mr. Lebel’s claim is subject to a comparative negligence assessment, and may be barred if a fact-finder determines that his negligence is greater than fifty (50%) of the total negligence of the parties.