Chin, Richard J., J.
BACKGROUND
The plaintiff, William Maguire, has flied an action seeking damages against the defendant, Matthew Smith, for personal injuries arising out of a motor vehicle accident that occurred on Februaiy 25, 2015. The Plaintiff, Krysta Maguire, is William Maguire’s wife and has filed a claim for loss of consortium.
The parties have filed a joint petition for approval of a settlement. The parties have agreed to settle this matter for $25,000.00, which is the policy limit.
They have proposed the following allocation:
[[Image here]]
Liberty Mutual, the worker’s compensation insurer, has filed an objection. Liberty Mutual has a workers’ compensation lien and has paid over $20,000.00 in benefits.
On November 18, 2015, the court held an eviden-tiary hearing. The only witnesses were William Mag-uire and Krysta Maguire.
FINDINGS OF FACT
After hearing, the court makes the following findings of fact.
On Thursday, Februaiy 26, 2015, the plaintiff, William Maguire, was in the course and scope of his *178 employment with UPS traveling on Route 6A in Yarmouth, Massachusetts, when he was involved in a head-on collision.
He immediately experienced neck pain and pain into his left, dominant arm and hand. He was transported by ambulance to Cape Cod Hospital where he was treated and released, He was unable to work the following day (Friday), but returned to work on Monday. His symptoms did not improve. Instead, his symptoms worsened with activity. He sought treatment from his primary care physician, Dr. Moore, who referred him for an MRI and physical therapy. After Mr. Maguire attended three physical therapy sessions, therapy was discontinued as it was aggravating his symptoms.
Mr. Maguire was unable to undergo an MRI based on Dr. Moore’s referral. Upon referral by UPS, Mr. Maguire began treating with Dr. Boyd. Dr. Boyd also recommended an MRI. The MRI was still denied by workers’ compensation, but was subsequently approved. Approximately two moths after the accident, Mr. Maguire underwent the MRI. After reviewing the MRI, his doctor recommended that he switch to light duty. He continued to work light duty until UPS declined to extend his light duty status. Thereafter, he began receiving weekly workers’ compensation benefits. Currently, he remains disabled from his job with UPS. Following the MRI, Mr. Maguire was referred to Dr. Alan Murphy, a neurosurgeon who has operated on Mr. Maguire’s neck several years before the accident of February 28, 2015. Dr. Murphy referred Mr. Maguire to Dr. Gannon for epidural steroid injections and an EMG, as did Dr. Boyd. A series of three epidural steroid injections was recommended.
Dr. Gannon performed a facet injection and one steroid injection, which improved Mr. Maguire’s symptoms approximately 30%, but only temporarily. He is currently awaiting approval from the workers’ compensation insurer for the additional injections that have been recommended. The EMG has also not been approved by the insurer.
Mr. Maguire continues to experience burning pain in his neck, which radiates into his left arm. He is unable to sleep well. He experiences irritability and bowel issues as side effects of his pain medications.
The Maguires have been married for over twenty years and have an eleven-year-old son, Tyler, who has been diagnosed with autism and ADHD. Before his accident, Mr. Maguire participated in many physical activities with his son. Since the accident, however, he has been unable to engage in their typical activities such as playing, swimming, or riding bikes. Mr. Mag-uire has been unable to do yard chores and his ability to help his wife around the house has been greatly diminished as activity increases his symptoms.
Mr. Maguire’s limitations and irritability have placed a great strain on Mrs. Maguire and on their marriage. Since the accident, Mrs. Maguire has had to take on additional chores with the groceries and housework. More importantly, she has taken on even more of the responsibility and strain of caring for Tyler.
The Maguires have been unable to visit Mrs. Maguire’s mother in New Jersey, as the family usually would two to three times per year. They were unable to enjoy their typical vacation activities, including going to New Hampshire or to Canobie Lake Park with Tyler.
Prior to this accident, the Maguires engaged in sexual relations approximately twice monthly, They have not engaged in any sexual relations since the accident. They fight on a daily basis and often do not communicate at all when they are not fighting. As a result of this accident, Mrs. Maguire worries about their loss of health insurance and the impact that will have on Tylers medical care. Her doctor has recently recommended that she seek counseling.
RULINGS OF LAW
Liberty Mutual does not object to the allocation of $6,250.00. for Mr. Maguire’s pain and suffering. However, it does object to the allocation of 50% of the gross settlement to Mrs. Maguire for loss of consortium.
Liberty Mutual suggests that an allocation of $3,750.00 for loss of consortium is reasonable. This would leave the balance of 15,000.00 to be paid to Liberty Mutual.
G.L.c. 152, §15 requires that the settlement agreement be approved by a judge after hearing. In this matter, the court, after hearing, must determine whether the allocation between the injured employee and the employee’s spouse is fair. However, the court may not require the parties to settle on terms found by the court to be fair and reasonable. Walsh v. Telesector Resources Group, 40 Mass.App.Ct. 227 (1996).
Liberty Mutual objects to a 50% allocation of the gross settlement to Krysta Maguire for her loss of consortium. It argues that it is unfair to insulate 75% of the settlement from the insurers right of reimbursement of compensation benefits paid.
Liberty Mutual relies primarily on the case of Hultin v. Francis Harvey & Sons, Inc., 40 Mass.App.Ct. 692 (1996).
The court held that:
(an) allocation formula—heavily favoring as it does the consortium plaintiff over the employee—is quite unusual.
Absent countervailing factors such as are found here (or other equally unusual factors), we think that a settlement agreement of an employee’s third-party tort action that has been submitted to the Superior Court for approval, pursuant to G.L.c. 152, §15, wherein the bulk of the settlement proceeds have been allocated to the loss of consortium claims of the nonemployee spouse or family mem *179 ber, and not to the claims of the injured employee must be eyed by the court with a healthy dose of skepticism.
Huitín at 699.
In Huitín, the court approved an allocation of 79% of the proceeds to the spouse for loss of consortium and 21% to the injured worker. The court found that the wife’s loss was substantial and that the husband’s claim was speculative because of his comparative negligence.
For her part, the wife has suffered the substantial loss of her husband’s companionship and consort. The couple now have little social life to speak of, where, before the accident, they enjoyed an active social life together. They no longer engaged in marital relations, and the wife has not been able to return to work as she must provide day-to-day care for her husband, including preparing his meals and assisting him -with bathing and dressing. In addition, the wife must now do all of the outside yard work around the couple’s house, where previously that was largely her husband’s domain. Because Huitín has little control over his hands or his grip, the wife must perform certain basic manual operations for him. As a result of extensive burning over much of Hultin’s body, he is unable properly to adjust to normal room temperatures and, hence, will sometimes turn on the air conditioner in the winter, or the heat in summer, creating obvious and extreme discomfort for his wife. Overall, Hultin’s frustration, anger, frequent mood swings, and seeming loss of interest in life are difficult for his wife to live with.
Huitín at 697.
In Huitín, the employee’s injuries were severe and required the wife to quit her job and to provide daily care to her husband. William Maguire’s injuries were not that severe. Krysta Maguire did have to take on additional household chores and had to provide care to her son.
The Maguires testified that William was no longer able to assist in the care of their autistic son. However, there as no testimony as to the nature of the son’s disability or the daily needs of their son. There was no evidence regarding any weaknesses in the husband’s claim.
In the present case, there are no usual circumstances that would warrant an allocation giving the wife twice as much as the husband.
FINDINGS AND ORDER
The court finds that the proposed allocation is unfair and deprives the insurer of its right to reimbursement. The Joint Petition for Approval of Settlement Pursuant to G.L.c. 152, §15 is DENIED.